IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| L.J. ZUCCA, INC. | : | |
| Plaintiff, | : | C.A. No. 1:07-CV-2 (MPT) |
| v. | : | |
| ALLEN BROS. WHOLESALE DISTRIBUTORS INC. *et al.*, | : | |
| Defendants. | : | **ORAL ARGUMENT REQUESTED** |

---

**DEFENDANT COOPER-BOOTH WHOLESALE COMPANY'S
BRIEF IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS**

---

**BLANK ROME LLP**
David K. Sheppard, Esquire
I.D. No. 4149
1201 Market Street, Suite 800
Wilmington, DE 19801
Phone: (302) 425-6400
Fax      (302) 425-6464

and

Stephen M. Orlofsky, Esquire
Kit Applegate, Esquire
210 Lake Drive East, Suite 200
Woodland Falls Corporate Park
Cherry Hill, New Jersey 08002
Phone: (856) 779-3600
Fax:     (856) 779-7647

Attorneys for Defendant
Cooper-Booth Wholesale Company

Dated: January 23, 2007

# TABLE OF CONTENTS

INTRODUCTION .................................................................................. 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................. 3

SUMMARY OF ARGUMENT ................................................................. 5

STATEMENT OF FACTS ....................................................................... 6

ARGUMENT ...................................................................................... 7

    I.    The UCSA Condones Conduct That Constitutes A Per Se Violation
        Of The Sherman Act. ................................................................ 8

        A.    The UCSA Establishes Minimum Resale Prices For
            Wholesalers According To The Cigarette Manufacturers'
            Invoice Price. ............................................................... 8

        B.    Minimum Resale Price Maintenance Is A Per Se Violation
            Of The Sherman Act. .................................................... 10

    II.    The UCSA Is A "Hybrid" Restraint.  Private Actors Are Granted
        A Degree Of Private Regulatory Power In Setting Wholesalers'
        Minimum Resale Prices. .......................................................... 12

        A.    A "Hybrid" Restraint Is A State Statute That Imposes A Price
            Restraint, But Leaves To Private Parties The Job Of Setting
            The Actual Dollar Amount Of That Price Restraint. .............. 12

        B.    The Actual Minimum Resale Prices Imposed Upon Wholesalers
            By The UCSA Are Set Not By The State Of Delaware But
            By The Cigarette Manufacturers. ...................................... 17

    III.    The State Action Antitrust Immunity Doctrine Does Not Save The
        UCSA From Preemption.  Delaware Does Not "Actively Supervise"
        The Setting Of Wholesalers' Minimum Resale Prices. ........................ 18

CONCLUSION ..................................................................................... 22

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*324 Liquor Corp. v. Duffy*,
479 U.S. 335 (1987) .......................................................................*passim*

*California Retail Liquor Dealers Associate v. Midcal Aluminum, Inc.*,
445 U.S. 97 (1980) ........................................................................*passim*

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) ............................................................................ 12

*Dr. Miles Medical Co. v. John D. Park & Sons Co.*,
220 U.S. 373 (1911) ....................................................................... 10, 11

*FTC v. Ticor Title Insurance Co.*,
504 U.S. 621 (1992) ............................................................................ 21

*Fisher v. City of Berkeley*,
475 U.S. 260 (1986) ................................................................. 12, 13, 14

*Freedom Holdings Inc. v. Spitzer*,
357 F.3d 205 (2d Cir. 2004) ................................................................. 7

*Gade v. National Solid Wastes Management Associate*,
505 U.S. 88 (1992) ............................................................................... 7

*Parker v. Brown*,
317 U.S. 341 (1943) .......................................................... 2, 4, 18, 20

*Patrick v. Burget*,
486 U.S. 94 (1988) ............................................................................. 19

*Rice v. Norman Williams Co.*,
458 U.S. 654 (1982) ........................................................................... 10

*Schwegmann Brothers v. Calvert Corp.*,
341 U.S. 384 (1951) ................................................................ 13, 14, 15

*TFWS, Inc. v. Schaefer*,
242 F.3d 198 (4th Cir. 2001) ........................................................... 7, 9

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*,
164 F.3d 186 (3d Cir. 1998) ................................................................. 7

ii

*Ticor Title Insurance Co. v. Federal Trade Commission*,
    998 F.2d 1129 (3d Cir. 1993) ....................................................................... 19, 21

## MISCELLANEOUS

5C Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1369 (3d ed. 2004) ........................................ 8

6 *Del. C.* §§ 2601-2608 ...................................................................................... *passim*

New Jersey Unfair Cigarette Sales Act,
    N.J. Stat. Ann. §§ 56:7-18 – 56:7-38 .................................................................. 3

Pennsylvania Cigarettes Sales and Licensing Act,
    72 Pa. Stat. Ann. §§ 202-A – 231-A ................................................................. 3

15 U.S.C. § 1 ...................................................................................................... *passim*

110018.00602/30307246v.1

## INTRODUCTION

The Court is presented by way of a Rule 12(c) motion for judgment on the pleadings with a dispositive issue of statutory interpretation: Whether Section 1 of the Sherman Act, 15 U.S.C. § 1, preempts the Delaware Unfair Cigarette Sales Act, 6 *Del.* C. §§ 2601 – 2608.

In Count I of its First Amended Verified Complaint, Plaintiff L.J. Zucca, Inc. ("Zucca") has sued Cooper-Booth Wholesale Company ("Cooper-Booth") and the other defendants for alleged violations of the Delaware Unfair Cigarette Sales Act ("UCSA"). The UCSA prohibits wholesalers from selling cigarettes at less than "cost to the wholesaler." The "cost to the wholesaler," in turn, is based upon a statutory formula that is calculated according to the cigarette manufacturer's invoice price to the wholesaler. The result is that cigarette manufacturers can fix their wholesalers' minimum resale prices. Minimum resale price maintenance has consistently been held by the United States Supreme Court to be a *per se* violation of the Sherman Act.

Cooper-Booth, therefore, moves for partial judgment on the pleadings on the ground that the UCSA is preempted by the Sherman Act. All the pre-requisites established by the United States Supreme Court for finding Sherman Act preemption are present in this case.

First, the UCSA condones conduct — minimum resale price maintenance — that constitutes a *per se* violation of the Sherman Act.

Second, the UCSA is a "hybrid," as opposed to a "unilateral," restraint. This means that, although the minimum resale prices are statutorily imposed upon

1

wholesalers, private parties, and not the State, actually determine what those minimum prices are.

Third, the state action immunity doctrine established by the United States Supreme Court in *Parker v. Brown*, 317 U.S. 341 (1943), does not save the UCSA from preemption, because the State of Delaware does not "actively supervise" the setting of the wholesalers' minimum resale prices for cigarettes.

Consequently, the UCSA is preempted by the Sherman Act and judgment should be entered in Cooper-Booth's favor on Count I of Zucca's First Amended Verified Complaint.

2

## STATEMENT OF THE NATURE
## AND STAGE OF THE PROCEEDINGS

Zucca filed this lawsuit in the Court of Chancery of the State of Delaware for New Castle County. Cooper-Booth timely removed the matter to this Court on the basis of diversity jurisdiction. Following removal, Zucca filed a First Amended Verified Complaint. Count I of Zucca's First Amended Verified Complaint charges that all of the defendants have violated the Delaware Unfair Cigarette Sales Act, 6 *Del. C.* §§ 2601 – 2608. Cooper-Booth has filed an Answer; the other defendants have not. Cooper-Booth now files this motion under Rule 12(c) for partial judgment on the pleadings on the ground that the Delaware Unfair Cigarette Sales Act is preempted by Section 1 of the Sherman Act, 15 U.S.C. § 1.

There is related litigation involving the parties in New Jersey as well. In November 2005, Zucca filed suit in the Superior Court of New Jersey, Law Division, Cumberland County. The case is now pending in the Chancery Division, captioned *L.J. Zucca, Inc. v. Allen Bros. Wholesale Distributors, Inc. et al.*, Docket No. C-19-06. That lawsuit has twenty-eight named defendants. All four of the defendants in this case are also defendants in the New Jersey litigation. Zucca asserted claims under: (1) the Delaware Unfair Cigarette Sales Act, 6 *Del. C.* §§ 2601 – 2608, (2) the New Jersey Unfair Cigarette Sales Act, N.J. Stat. Ann. §§ 56:7-18 – 56:7-38, and (3) the Pennsylvania Cigarettes Sales and Licensing Act, 72 Pa. Stat. Ann. §§ 202-A – 231-A. As in this case, Cooper-Booth moved to dismiss the statutory claims on the ground that the Delaware, New Jersey, and Pennsylvania statutes were preempted by the Sherman Act. Following the filing of Cooper-Booth's motion but before oral argument, the New

3

Jersey court dismissed the Delaware and Pennsylvania claims on comity grounds. On December 15, 2006, the Honorable Anne McDonnell, P.J.C. denied Cooper-Booth's motion without prejudice, finding that there was a fact issue that precluded the Court from determining whether the New Jersey UCSA was saved from preemption by reason of the state action immunity doctrine enunciated in *Parker v. Brown*, 317 U.S. 341 (1943). The New Jersey court directed that the parties conduct limited discovery on the issue of "active supervision" and that Cooper-Booth refile its motion. Zucca has since filed a motion for reconsideration, contending the court's December 15th ruling was "erroneous." Zucca's motion for reconsideration is tentatively scheduled to be heard by the New Jersey court on February 2, 2007.

4

## SUMMARY OF ARGUMENT

The Delaware Unfair Cigarette Sales Act ("UCSA"), 6 *Del. C.* §§ 2601 – 2608, is preempted by Section 1 of the Sherman Act, 15 U.S.C. All three pre-requisites for finding Sherman Act preemption are present:

- First, the UCSA establishes minimum resale prices for cigarettes. Minimum resale price maintenance is a *per se* violation of the Sherman Act.

- Second, the UCSA is a "hybrid," as opposed to a "unilateral," restraint. That is, although the UCSA imposes minimum resale prices upon wholesalers, private parties, not the State, actually determine what those minimum prices are.

- Third, the state action immunity doctrine does not save the UCSA from preemption, because the State of Delaware does not "actively supervise" the setting of the wholesalers' minimum resale prices for cigarettes.

5

## STATEMENT OF FACTS

Zucca and the defendants, including Defendant Cooper-Booth, are wholesale distributors of cigarettes to convenience stores and other retail outlets in Delaware. *See* Amend. Compl. ¶¶ 6, 11.

Zucca alleges that the defendants "have sold and continue to regularly sell cigarettes below their cost and the minimum prices prescribed by applicable laws, with the intent to remove or substantially lessen competition in Delaware." *Id.* ¶ 12.

As a result, Zucca alleges that it has been "damaged by its loss to the defendants of substantial business in the form of existing and potential customers, the loss of market share, and ultimately the loss of revenue." *Id.* ¶ 14.

6

## ARGUMENT

The Sherman Act preemption analysis applicable to this case is a three-step inquiry. First, the state statute must require conduct that would constitute a *per se* violation of the Sherman Act. Second, the state statute must be what the Supreme Court terms a "hybrid," as opposed to a "unilateral," restraint. Third, the Court must determine whether the state action immunity doctrine announced in *Parker v. Brown*, 317 U.S. 341 (1943), saves the state statute from preemption. *See, e.g., Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 223-24 (2d Cir. 2004); *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 206-07 (4th Cir. 2001). If not, then pursuant to the Supremacy Clause embodied in Article VI of the United States Constitution,[1] the state statute is preempted. *See Gade v. National Solid Wastes Mgmt. Assoc.*, 505 U.S. 88, 108 (1992) ("[U]nder the Supremacy Clause, from which [the] pre-emption doctrine is derived, 'any state law, however, clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.'").

With that said, Cooper-Booth brings this preemption challenge in the context of a Rule 12(c) motion for judgment on the pleadings. Similar to a Rule 12(b)(6), the Court must accept Zucca's well-pleaded allegations as true. *See, e.g., Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998) However, unlike a Rule 12(b)(6) motion, the Court's inquiry is not limited to the four corners of the plaintiff's pleading to

---

[1] The Supremacy Clause reads: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. Art. VI, ¶ 2.

7

determine whether a claim has merely be stated.  Rather, the Court's inquiry is addressed
to the substantive merits of the plaintiff's stated claim.  *See* 5C Charles Alan Wright &
Arthur R. Miller, *Federal Practice and Procedure* § 1369 (3d ed. 2004).  In that light,
determining whether the UCSA is preempted by the Sherman Act is both appropriate and
ripe for adjudication by way of a Rule 12(c) motion for judgment on the pleadings.

I.   **The UCSA Condones Conduct That Constitutes A *Per Se* Violation Of The Sherman Act.**

A.   **The UCSA Establishes Minimum Resale Prices For Wholesalers According To The Cigarette Manufacturers' Invoice Price.**

The UCSA prohibits wholesalers from selling cigarettes at less than "cost to the
wholesaler."  *See* 6 *Del. C.* § 2601.  "Cost to the wholesaler" is determined by a statutory
formula that is equal to the sum of the "basic cost of cigarettes" plus the "cost of doing
business":

$$\begin{array}{r}
\text{"Basic Cost of Cigarettes"} \\
+ \quad \underline{\text{"Cost of Doing Business"}} \\
\text{"Cost to the Wholesaler"}
\end{array}$$

*See* 6 *Del. C.* § 2602(4).

The "basic cost of cigarettes" and "cost of doing business," in turn, are both
statutorily defined terms.

The "basic cost of cigarettes" is defined as the manufacturer's invoice price less
all discounts:

> "Basic cost of cigarettes" means the invoice cost of cigarettes to
> the wholesaler, or the replacement cost of cigarettes to the
> wholesaler (i.e., the cost for which cigarettes could have been
> bought by the wholesaler at any time within 30 days prior to the
> date of sale by the wholesaler), whichever is lower, plus in-freight
> charges not otherwise included in invoice or replacement cost, less
> all trade discounts and the usual and customary 2 percent cash

8

discount, plus the full face value of any cigarettes taxes payable on cigarettes sold.

6 *Del. C.* § 2602(1).

The "cost of doing business," in turn, is presumed to be 5% of the "basic cost of cigarettes":

> In the absence of satisfactory proof of a lesser cost of doing business by any wholesaler, the cost of doing business shall be presumed to be 5 percent of the basic cost of cigarettes to the wholesaler.

6 *Del. C.* § 2602(4).

Because both the "basic cost of cigarettes" and the "cost of doing business" are defined in terms of the manufacturer's invoice price, the "cost to the wholesaler" (*i.e.*, the wholesaler's minimum resale price) is in turn determined by the manufacturer's invoice price:

$$\begin{array}{r}
\text{"Basic Cost of Cigarettes" (Manufacturer's Invoice Price)} \\
+ \quad \underline{\text{"Cost of doing business" (5\% of the "Basic Cost of Cigarettes" (Manufacturer's Invoice Price))}} \\
\text{"Cost to the Wholesaler"}
\end{array}$$

Because every element of the statutory formula is defined in terms of the cigarette manufacturer's invoice price, the cigarette manufacturer can set and manipulate the wholesaler's minimum resale price under the UCSA.

For example, assume the cigarette manufacturer's invoice price for a box of cigarettes is $5.00. Under the statutory formula set by the UCSA, the wholesaler's minimum resale price — the price beneath which the wholesaler is prohibited from selling — for that box of cigarettes would be $5.25:

$$\begin{array}{r}
\$5.00 \text{ ("Basic Cost of Cigarettes")} \\
+ \quad \underline{\$0.25 \text{ ("Cost of doing business" (5\% of the "Basic Cost of Cigarettes"))}} \\
\$5.25 \text{ ("Cost to the Wholesaler")}
\end{array}$$

9

Now assume the cigarette manufacturer decides to raise its invoice price for a box of cigarettes to $6.00. Under the statutory formula, the wholesaler's minimum resale price for that box of cigarettes is raised as a result to $6.30 (regardless of the fact that his actual overhead costs may have remained the same):

$6.00 ("Basic Cost of Cigarettes")
+ $0.30 ("Cost of doing business" (5.25% of the "Basic Cost of Cigarettes")
$6.30 ("Cost to the Wholesaler")

Thus, as the above examples show, the cigarette manufacturer has the power under the UCSA to set, raise, and lower his wholesalers' minimum resale price. This also means that the cigarette manufacturer has the ability to eliminate price competition between its wholesalers and charge consumers inflated prices. This is resale price maintenance in its purest form. The cigarette manufacturer "holds the power to prevent price competition by dictating the prices charged by wholesalers." *California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 103 (1980).

**B.    Minimum Resale Price Maintenance Is A *Per Se* Violation Of The Sherman Act.**

A state statute will only be preempted if it sanctions conduct that constitutes a *per se* violation of the Sherman Act. *See Rice v. Norman Williams Co.*, 458 U.S. 654, 661 (1982); *TFSW, Inc. v. Schaefer*, 242 F.3d 198, 207 (4th Cir. 2002).

This is not a problem here. The United States Supreme Court has consistently held minimum resale price maintenance to be a *per se* violation of Section 1 of the Sherman Act. *See, e.g., 324 Liquor Corp. v. Duffy*, 479 U.S. 335, 342 (1987); *California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 103 (1980); *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 407 (1911). As the Supreme

10

Court has explained, "[m]andatory industrywide resale price fixing is virtually certain to reduce interbrand competition as well as intrabrand competition, because it prevents manufacturers and wholesalers from allowing or requiring retail price competition." *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 342 (1987). The manufacturer "having sold its product at prices satisfactory to itself, the public is entitled to whatever advantage may be derived from competition in the subsequent traffic." *Dr. Miles*, 220 U.S. at 409.

The result of the UCSA is that wholesalers are prohibited from passing their cost savings onto customers, resulting in artificially high cigarettes prices that, because of the minimum resale prices mandated by the UCSA, are immune from competitive market forces.[2]

---

[2] Several states have unfair cigarette sale statutes or statutes like them. Most of them, including Delaware's, are creatures of the past, enacted during a time when the Sherman Act contained an express exception for them. But as the Supreme Court recounts in *Midcal*, Congress rescinded that exception with the enactment of the Consumer Goods Pricing Act of 1975. *See California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 102 (1980). The States, however, have no incentive to repeal the statutes. They keep cigarette prices high and out of underage hands. *See* Robert Whereat, *Carlson Drops Plan to Cut Price Controls on Cigarettes*, Star Tribune, Jan. 30, 1997, at B1 (quoting the Minnesota Revenue Commissioner that "[r]epealing the act could potentially lower cigarette prices" and noting that high prices discourage use among young people). The tobacco companies, meanwhile, are prohibited by the Master Settlement Agreement from initiating any "facial challenge against the enforceability or constitutionality of such Settling State's . . . statutes, ordinances and administrative rules relating to *tobacco control* enacted prior to June 1, 1998 . . . ." *See* Master Settlement Agreement § V.

## II.    The UCSA Is A "Hybrid" Restraint.  Private Actors Are Granted A Degree Of Private Regulatory Power In Setting Wholesalers' Minimum Resale Prices.

### A.    A "Hybrid" Restraint Is A State Statute That *Imposes* A Price Restraint, But Leaves To Private Parties The Job Of *Setting* The Actual Dollar Amount Of That Price Restraint.

In the Sherman Act preemption analysis, the Supreme Court distinguishes between state statutes that are "unilateral" restraints and state statutes that are "hybrid" restraints.  Only the latter are subject to preemption by the Sherman Act.[3]  *See Fisher v. City of Berkeley*, 475 U.S. 260, 267-68 (1986).

There are four Supreme Court opinions that touch upon the issue.  The deciding factor in all four of those cases that caused the Court to categorize the state statute as either a "unilateral" restraint or a "hybrid" restraint was ***whether the State set the actual dollar amount of the price restraint imposed by the statute.***  Put simply, a state statute that both *imposes* a price restraint and *sets* the actual dollar amount of the price restraint is a unilateral restraint.  By contrast, a statute that simply *imposes* a price restraint but leaves it to private parties to *set* the actual dollar amount of the price restraint is a

---

[3] The reason for distinguishing between state statutes that are "unilateral" restraints and state statutes that are "hybrid" restraints is because Section 1 of the Sherman Act only reaches "unreasonable restraints of trade effected by a 'contract, combination . . . , or conspiracy' between separate entities."  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984).  Under a unilateral restraint, there is no risk of concerted action.  The price restraint is both imposed and calculated by the statute.  By contrast, under a hybrid restraint, there is a risk of concerted action.  The statute simply imposes the price restraint but leaves it up to private parties to calculate or determine the extent of that price restraint and do under the guise of the state statute that which the Sherman Act forbids.

12

"hybrid" restraint. The below analysis of the four Supreme Court cases that have touched upon the issue shows the decisive import of this factor.

1.     *Schwegmann Bros. v. Calvert Corp.*, 341 U.S. 384 (1951).

*Schwegmann* involved a Louisiana statute that authorized liquor distributors to enforce agreements fixing retail prices not only against parties to such contracts, but also against retailers who sold the distributors' products without having agreed to the price restrictions. The Supreme Court found the two liquor distributors in that case had violated the Sherman Act when they attempted to hold a retailer to the price-fixing terms of a contract it had refused to sign. "[W]hen a state compels retailers to follow a parallel price policy, it demands private conduct which the Sherman Act forbids." *Id.* at 389. In later interpreting *Schwegmann*, the Court characterized the Louisiana statute in that case as being a hybrid restraint because of the supplier's involvement in setting the retailers' resale prices:

> While the petitioner-retailer in that case may have been legally required to adhere to the [price] levels so selected, *the involvement of his suppliers in **setting those prices** made it impossible to characterize the regulation as unilateral action by the State of Louisiana.*

*Fisher*, 475 U.S. at 268 (emphasis added).

2.     *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980).

The Supreme Court condemned a California liquor law in *Midcal* as a hybrid restraint because it too entailed a degree of free participation by private actors in setting their dealers' minimum resale prices. The California law in that case required that all wine producers, wholesalers, and rectifiers file fair trade contracts or price schedules with

13

the State. If a wine producer did not set prices, wholesalers had to post a resale price schedule for that producer's brands. No state-licensed wine merchant could sell wine to a retailer at other than the posted price. *See id.* at 99. The Court found that "California's system for wine pricing plainly constitute[d] resale price maintenance in violation of the Sherman Act." *Id.* at 103. "The wine producer holds the power to prevent price competition by dictating the prices charged by wholesalers." *Id.*

The decisive fact that caused the Court to conclude that the California statute was a hybrid as opposed to a unilateral restraint was that the State did not set the *actual* wine prices; the vintners set the prices. *See id.* at 100. "[T]he mere existence of legal compulsion [that is, the state statute requiring price setting] did not turn California's scheme into unilateral action by the State." *Fisher*, 475 U.S. at 268 (discussing *Midcal*).

### 3.  *Fisher v. City of Berkeley*, 475 U.S. 260 (1986).

*Fisher* is the only Supreme Court case where the Court found the law at issue to be a unilateral restraint. The reason the Supreme Court reached that conclusion in *Fisher* was because all pricing discretion was removed from private actors. The State alone calculated the *actual* price restraint — in that case a city ordinance imposing a rent ceiling — and not private actors.

In *Fisher*, the City of Berkeley enacted a rent stabilization ordinance that required landlords to adhere to prescribed rent ceilings. *Id.* at 262-63. Important to the Court's decision was the fact that the actual rent ceilings were set by the City. *See id.* at 262. That is, unlike in *Schwegmann* or *Midcal*, the ordinance did not leave it up to private actors (*i.e.*, the landlords) to calculate what the actual rent ceilings would be. A landlord

14

could only raise his rents pursuant to an annual adjustment made by the City's Rent Stabilization Board or after petitioning the Board for an individual adjustment. *See id.* In all instances though, the Board decided what the rent ceiling would be.

A group of landlords sued the City of Berkeley, contending the ordinance was a *per se* price fixing violation. *See id.* at 263. The Supreme Court rejected the landlords' challenge because the ordinance was a unilateral, not a hybrid, restraint. "Hybrid restraints," the Court noted, are those where "nonmarket mechanisms [*i.e.*, statutes] merely enforce private marketing decisions." *Id.* at 267-68. "Where private actors are thus granted 'a degree of private regulatory power,' the regulatory scheme may be attacked under [the Sherman Act]." *Id.* at 268.

In the case before it, however, the Court noted that the City of Berkeley *alone* controlled and dictated what the landlords' maximum rent levels would be: "Under Berkeley's Ordinance, control over the maximum rent levels of every affected residential unit has been unilaterally removed from the owners of those properties and given to the Rent Stabilization Board." *Id.* at 267. *See also id.* at 269-70 ("Berkeley's landlords have simply been deprived of the power freely to raise their rents.").

Because it was the City that actually determined what the landlords' maximum rent levels would be, the Court concluded that the restraint was a unilateral one, in contrast to the statutes condemned as hybrid restraints in *Schwegmann* and *Midcal* where, although the price restraints (in those cases, minimum resale prices) were statutorily mandated, private actors were involved in setting them:

> The hybrid restraints condemned in *Schwegmann* and *Midcal* were
> thus quite different from the pure regulatory scheme imposed by

15

> Berkeley's Ordinance.  While the Ordinance does give tenants —
> certainly a group of interested private parties — some power to
> trigger the enforcement of its provisions, *it places complete control
> over maximum rent levels **exclusively** in the hands of the Rent
> Stabilization Board.*  Not just the controls themselves but also the
> rent ceilings they mandate have been unilaterally imposed on the
> landlords by the city.

*Id.* at 269 (emphasis added).

### 4.    *324 Liquor Corp. v. Duffy*, **479 U.S. 335 (1986).**

*Duffy* involved a challenge to a state statute that is the most analogous to the

UCSA.  Similar to the UCSA, the New York statute at issue in *Duffy* prohibited retailers

of liquor from selling below "cost." *Id.* at 339.  "Cost" was defined as "the price of such

item of liquor to the retailer plus twelve percentum of such price." *Id.*  "Price," in turn,

was "defined as the posted bottle price in effect at the time the retailer sells or offers to

sell the item." *Id.* at 338-39.  Thus, similar to the formula in the UCSA, a retailer's

minimum resale price was determined in reference to his or her supplier's "posted bottle

price" plus a certain percentage markup.  The result of the New York statutory scheme,

the Supreme Court concluded, was that liquor wholesalers were able to fix their retailers'

resale prices:

> The New York retail pricing system thus permits wholesalers to set
> retail prices, and retail markups, without regard to actual retail
> costs. . . .  The effect of this complex of statutory provisions and
> regulations is to permit wholesalers to maintain retail prices at
> artificially high levels.

*Id.* at 340.  Wholesalers, not the State, established the posted prices and, in turn, the

retailers' minimum resale prices.  Given that fact, there was no issue concluding that the

New York statute was a hybrid restraint. As the Court noted, "private actors" were

"granted 'a degree of private regulatory power.'" *Id.* at 345 n. 8.

### B. The Actual Minimum Resale Prices Imposed Upon Wholesalers By The UCSA Are Set Not By The State Of Delaware But By The Cigarette Manufacturers.

In light of the above analysis, there can be no doubt that the UCSA is a hybrid

restraint. Private parties (*i.e.*, the cigarette manufacturers) can set wholesalers' minimum

resale prices. This is possible because, as we showed above, ***every element of the***

***formula established by the UCSA for calculating a wholesaler's minimum resale price***

***is defined in terms of the cigarette manufacturer's invoice price:***

> "Basic Cost of Cigarettes" (Manufacturer's Invoice Price)
> + "Cost of Doing Business" (5% of the "Basic Cost of Cigarettes" (Manufacturer's Invoice Price))
> Wholesaler's Minimum Resale Price

As the formula demonstrates, the State of Delaware plays no role in setting the

wholesalers' *actual* minimum resale prices. The numbers used in that formula are all

based off of the cigarette manufacturer's invoice price. Consequently, the cigarette

manufacturers, by raising or lowering their invoice prices, can control that formula to set

their wholesalers' minimum resale prices. It can be no clearer. The UCSA is a hybrid

restraint.

The Supreme Court's decision in *Duffy* dispels all possible doubt with that

conclusion. Like the New York statute in *Duffy*, the UCSA does not set the actual

minimum resale prices. Rather, like the statute in *Duffy*, the UCSA establishes a

statutory formula that incorporates the manufacturers' invoice price as the basis for

calculating the wholesalers' minimum resale prices. As in *Duffy*, the result is that

manufacturers can set their wholesalers' minimum resale prices. The inescapable legal

17

conclusion then, is that, just like the New York statute in *Duffy*, the UCSA is a hybrid restraint.

### III.    The State Action Antitrust Immunity Doctrine Does Not Save The UCSA From Preemption.  Delaware Does Not "Actively Supervise" The Setting Of Wholesalers' Minimum Resale Prices.

In *Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court carved out a limited preemption exception to the antitrust laws known as the state action antitrust immunity doctrine.  Founded on federalism concerns, it immunizes from federal antitrust scrutiny private conduct that is compelled by State regulation:

> We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature.  In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly attributed to Congress.

*Id.* at 350-51.

The immunity is limited, however.  "'[A] state statute does not give immunity to those who violate the Sherman Act [simply] by authorizing them to violate it, or by declaring that their action is lawful.'"  *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 344 (1987) (citation omitted).  Rather, the Supreme Court has developed a two-part test to determine whether immunity is appropriate:

> First, the challenged restraint must be "one clearly articulated and affirmatively expressed as state policy"; second, the policy must be "actively supervised" by the State itself.

*California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980).

The UCSA does not pass the "active supervision" prong of this test.

"[T]he active supervision requirement mandates that the State exercise ultimate control over the challenged anticompetitive conduct. The mere presence of some state involvement or monitoring does not suffice. The active supervision prong . . . requires that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy. Absent such a program of supervision, there is no realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests." *Patrick v. Burget*, 486 U.S. 94, 100 (1988) (citations omitted).

In cases involving statutory schemes that require minimum resale price maintenance, the Supreme Court's precedent teaches that "active supervision" requires no less than complete control of the pricing process by the State by either:

    (1)    the State itself setting the resale price; or

    (2)    through some process of active review and approval of the price established by private parties.

*See, e.g., Ticor Title Ins. Co. v. Federal Trade Commission*, 998 F.2d 1129, 1139 (3d Cir. 1993) ("The Supreme Court . . . expressly declared that when prices are initially set by private parties, the person claiming immunity must show that the state undertook steps to evaluate the rate setting scheme.").

In *Midcal* for example, the California law at issue there prohibited wine merchants from selling wine at prices less than that established by the wine producers. Because California did not exercise direct control over the resulting prices set by the

19

private actors, and did not review the reasonableness of the prices, the Supreme Court

concluded there was no "active supervision":

> The State simply authorizes price setting and enforces the prices
> established by private parties. The State neither establishes prices
> nor reviews the reasonableness of the price schedules . . . . The
> State does not monitor market conditions or engage in any
> "pointed examination" of the program. The national policy in
> favor of competition cannot be thwarted by casting such gauzy
> cloak of state involvement over what it essentially a private price-
> fixing agreement. As *Parker* teaches, "a state does not give
> immunity to those who violate the Sherman Act by authorizing
> them to violate it, or by declaring their action is lawful . . . ."

*Midcal*, 445 U.S. at 105-06.

The Court reached the same result in *324 Liquor Corp. v. Duffy*, 479 U.S. 335

(1987). New York required liquor retailers to charge a minimum retail price of 112

percent of the wholesaler's "posted price." Again, there was no "active supervision," the

Court explained, because New York merely enforced the prices set by the wholesalers

and did nothing to review or establish those prices:

> New York's liquor-pricing scheme is not actively supervised by
> the State. As in *Midcal*, the State "simply authorizes price setting
> and enforces the prices established by private parties." New York
> "neither establishes prices nor reviews the reasonableness of the
> price schedules." New York "does not monitor market conditions
> or engage in any 'pointed reexamination' of the program." Each
> wholesaler sets its own "posted" prices; the State does not control
> month-to-month variations in posted prices. Nor does the State
> supervise the wholesaler's decision to "post off," the amount of the
> "post off," the corresponding decrease, if any, in the bottle price,
> or the frequency with which a wholesaler posts off. The State has
> displaced competition among liquor retailers without substituting
> an adequate system of regulation.

*Id.* at 344-45 (citations omitted).

As in *Midcal* and *Duffy*, wholesalers' minimum resale prices, though imposed by the UCSA, are set by private parties (the cigarette manufacturers) and not by the State of Delaware. Moreover, once set, Delaware does not review or otherwise approve the prices before they go into effect. This is not "actual supervision." There is no State check on the parties' price-setting discretion; no "independent judgment and control so that the details of the rates or prices have been established as a product of deliberate state intervention, [and] not simply by agreement among private parties." *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 634-35 (1992).

Accordingly, as in *Midcal* and *Duffy*, "actual supervision" is lacking. The UCSA simply authorizes the setting of minimum resale prices and enforces the prices established by private parties. Nothing in the UCSA directs the State of Delaware to take affirmative steps to independently and actively review, supervise, or otherwise police the setting of wholesalers' minimum resale prices. The state action antitrust immunity doctrine, therefore, does not apply, and consequently the UCSA is preempted by Section 1 of the Sherman Act.

110018.00602/30307246v.1

## CONCLUSION

For all of the foregoing reasons, Defendant Cooper-Booth Wholesale Company's Motion for Partial Judgment on the Pleadings to dismiss Plaintiff L.J. Zucca, Inc.'s claims brought in Count I of the First Amended Verified Complaint for violations of the Delaware Unfair Cigarette Sales Act, 6 *Del. C.* §§ 2601 – 2608, should be granted.

The Delaware Unfair Cigarette Sales Act is a "hybrid" restraint that sanctions and requires minimum resale price maintenance of cigarettes in contravention to Section 1 of the Sherman Act. Moreover, the State of Delaware does not "actively supervise" the setting of those prices. Consequently, the state action antitrust immunity doctrine is inapplicable, and the Delaware Unfair Cigarette Sales Act is preempted by the Sherman Act pursuant to the Supremacy Clause in Article VI of the United States Constitution.

22

Respectfully submitted,

**BLANK ROME LLP**

Dated: January 23, 2007

David K. Sheppard, Esquire (I.D. No. 4149)
1201 Market Street, Suite 800
Wilmington, DE 19801
Phone: (302) 425-6400
Fax     (302) 425-6464

and

Stephen M. Orlofsky, Esquire
Kit Applegate, Esquire
210 Lake Drive East, Suite 200
Woodland Falls Corporate Park
Cherry Hill, New Jersey 08002
Phone: (856) 779-3600
Fax:     (856) 779-7647

Attorneys for Defendant
Cooper-Booth Wholesale Company

23

## CERTIFICATE OF SERVICE

I, David K. Sheppard, certify that on January 23, 2007, I served a copy of **Defendant**

**Cooper-Booth Company's Brief in Support of Motion for Partial Judgment on the**

**Pleadings** upon the following counsel in the manner indicated below:

### VIA ELECTRONIC SERVICE

Kimberly M. Large, Esquire
Saul Ewing LLP
222 Delaware Ave., Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Attorneys for Plaintiff
L.J. Zucca, Inc.

### VIA FIRST CLASS MAIL

Eric Rayz, Esquire
Kalikhman & Rayz, LLC
1051 County Line Rd., Suite 102
Huntingdon Valley, PA 19006
Attorneys for Defendant
Allen Bros. Wholesale Distributors, Inc.

Michael D. Fioretti, Esquire
Chance & McCann, LLC
201 West Commerce St.
Bridgeton, NJ 08302
Attorneys for Defendant
Eby-Brown Company LLC

Brian C. Wille, Esquire
Kostelanetz & Fink, LLP
530 Fifth Ave.
New York, NY 10036
Attorneys for Defendant
Western Skier Ltd.

David K. Sheppard
I.D. No. 4149