## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

L.J. ZUCCA, INC.                          :
                                          :
            Plaintiff,                    :    C.A. No. 1:07-CV-2 (JJF)
                                          :
      v.                                  :
                                          :
ALLEN BROS. WHOLESALE                     :
DISTRIBUTORS INC. *et al.*,               :
                                          :
            Defendants.                   :    **ORAL ARGUMENT REQUESTED**
                                          :

---

## DEFENDANT COOPER-BOOTH WHOLESALE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

---

**BLANK ROME LLP**
CHRISTINE S. AZAR, Esquire
I.D. No. 4170
1201 Market Street, Suite 800
Wilmington, DE 19801
Phone: (302) 425-6400
Fax      (302) 425-6464

and

Stephen M. Orlofsky, Esquire
Kit Applegate, Esquire
210 Lake Drive East, Suite 200
Woodland Falls Corporate Park
Cherry Hill, New Jersey 08002
Phone: (856) 779-3600
Fax:     (856) 779-7647

Attorneys for Defendant
Cooper-Booth Wholesale Company

Dated: March 12, 2008

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................ 3

SUMMARY OF ARGUMENT .............................................................................. 5

STATEMENT OF FACTS ..................................................................................... 6

ARGUMENT ....................................................................................................... 7

    I.     The UCSA Condones Conduct That Constitutes A Per Se Violation Of
           The Sherman Act ........................................................................................ 8

          A.    Horizontal Price Restraints Are A Per Se Violation Of Section 1
               Of The Sherman Act ......................................................................... 8

          B.    The UCSA Establishes A Formula That All Wholesalers Must
               Use To Calculate Their Minimum Resale Prices For Cigarettes ........ 10

    II.    The UCSA Is A "Hybrid" Restraint .......................................................... 13

          A.    A "Hybrid" Restraint Is A State Statute That Imposes A Price
               Restraint, But Leaves To Private Parties The Job Of Setting The
               Actual Dollar Amount Of That Price Restraint ................................. 13

          B.    Wholesalers' Minimum Resale Prices Are Not Set By The State
               Of Delaware But By Private Actors ................................................... 17

    III.   The State Action Antitrust Immunity Doctrine Does Not Save The
           UCSA From Preemption ............................................................................ 18

CONCLUSION .................................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

*324 Liquor Corp. v. Duffy,*
    479 U.S. 335 (1986) ................................................................17, 18, 19, 21, 22

*Business Electronics Corp. v. Sharp Electronics Corp.,*
    485 U.S. 717 (1988) ................................................................................9

*California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,*
    445 U.S. 97 (1980) ..............................................14, 15, 16, 19, 20, 21, 22

*FTC v. Ticor Title Insurance Co.,*
    504 U.S. 621 (1992) ..............................................................................22

*Fisher v. City of Berkeley,*
    475 U.S. 260 (1986) ................................................................13, 14, 15, 16

*Freedom Holdings Inc. v. Spitzer,*
    357 F.3d 205 (2d Cir. 2004) ....................................................................7

*Gade v. National Solid Wastes Management Associate,*
    505 U.S. 88 (1992) ................................................................................7

*Goldfarb v. Virginia State Bar,*
    421 U.S. 773 (1975) ..............................................................................12

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.,*
    127 S. Ct. 2705 (2007) ......................................................................1, 4, 8

*National Society of Professional Engineers v. United States,*
    435 U.S. 679 (1978) ..............................................................................12

*Parker v. Brown,*
    317 U.S. 341 (1943) ....................................................2, 4, 7, 18, 19, 20

*Patrick v. Burget,*
    486 U.S. 94 (1988) ................................................................................20

*Schwegmann Brothers v. Calvert Corp.,*
    341 U.S. 384 (1951) ................................................................13, 14, 15, 16

110018.00602/30327177v.1

*TFWS, Inc. v. Schaefer*,
    242 F.3d 198 (4th Cir. 2001) ...................................................................................7

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*,
    164 F.3d 186 (3d Cir. 1998) .....................................................................................7

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006) ......................................................................................................8

*Ticor Title Insurance Co. v. Federal Trade Commission*,
    998 F.2d 1129 (3d Cir. 1993) .................................................................................20

*United States v. Socony-Vacuum Oil Co.*,
    10 U.S. 150 (1940) .............................................................................................11, 12

## STATUTES

U.S. Const. Art. VI, ¶ 2 ....................................................................................................7

15 U.S.C. § 1 ........................................................................................................1, 3, 5, 8

6 Del. C. § 2601 ...............................................................................................................10

6 Del. C. § 2602 ........................................................................................................10, 11

## MISCELLANEOUS

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1369
    (3d ed. 2004) ..............................................................................................................8

XIX Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
Principles and Their Application* ¶ 2022 at 168-69 (Rev. ed. 1997) ....................9

## INTRODUCTION

In light of the United States Supreme Court's decision in *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 127 S. Ct. 2705 (2007), Defendant Cooper-Booth Wholesale Company ("Cooper-Booth") files this amended Rule 12(c) motion for judgment on the pleadings. This amended motion presents the same potentially dispositive issue of statutory interpretation as Cooper-Booth's original motion. Namely, whether Section 1 of the Sherman Act, 15 U.S.C. § 1, preempts the Delaware Unfair Cigarette Sales Act, 6 Del. C. §§ 2601 – 2608.

In Count I of its First Amended Verified Complaint, Plaintiff L.J. Zucca, Inc. ("Zucca") has sued Cooper-Booth and the other defendants for alleged violations of the Delaware Unfair Cigarette Sales Act ("UCSA"). That prohibits wholesalers from selling cigarettes at less than "cost to the wholesaler." Cooper-Booth's initial motion challenged the UCSA as being a form of minimum resale price maintenance; a *vertical restraint* that the United States Supreme Court traditionally condemned as being a *per se* violation of the Sherman Act. But after the parties fully briefed the motion, the Supreme Court's released its decision in *Leegin* and held that minimum resale price maintenance would no longer be considered a *per se* violation of the Sherman Act. Upon further research after the Supreme Court's decision in *Leegin,* Cooper-Booth has determined that it can still pursue the Sherman Act preemption argument on the revised premise that the UCSA is a *horizontal* price restraint, which, even after the decision in *Leegin*, remains a *per se* violation of the Sherman Act.

The Sherman Act preemption analysis has three steps.

1

First, the UCSA condones pricing conduct that constitutes a *per se* violation of the Sherman Act. The UCSA mandates that wholesalers use a common formula to determine the minimum price at which they may sell their cigarettes. Industrywide pricing of products by competitors in accordance with a common formula is horizontal price fixing and is a *per se* violation of the Sherman Act.

Second, the UCSA is a "hybrid," as opposed to a "unilateral," restraint. This means that, although minimum resale prices are statutorily imposed upon wholesalers, private parties, and not the State of Delaware, actually determine what those minimum prices are.

Third, the state action immunity doctrine established by the United States Supreme Court in *Parker v. Brown*, 317 U.S. 341 (1943), does not save the UCSA from preemption, because the State of Delaware does not "actively supervise" the setting of the wholesalers' minimum resale prices for cigarettes.

Consequently, the UCSA is preempted by the Sherman Act and judgment should be entered in Cooper-Booth's favor on Count I of Zucca's First Amended Verified Complaint.

2

## STATEMENT OF THE NATURE
## AND STAGE OF THE PROCEEDINGS

Zucca filed this lawsuit in the Court of Chancery of the State of Delaware for New Castle County. Cooper-Booth timely removed the matter to this Court on the basis of diversity jurisdiction. Following removal, Zucca filed a First Amended Verified Complaint. Count I of Zucca's First Amended Verified Complaint charges that all of the defendants have violated the Delaware Unfair Cigarette Sales Act, 6 Del. C. §§ 2601 – 2608. Cooper-Booth filed an Answer and on January 23, 2007, filed a motion under Rule 12(c) for partial judgment on the pleadings on the ground that the Delaware Unfair Cigarette Sales Act is preempted by Section 1 of the Sherman Act, 15 U.S.C. § 1 (D.I. 12). On March 12, 2008, Cooper-Booth withdrew that motion and filed this amended motion for partial judgment on the pleadings.

There is related litigation involving the parties in New Jersey state court. In November 2005, Zucca filed suit in the Superior Court of New Jersey, Law Division, Cumberland County. That case is ongoing and is captioned *L.J. Zucca, Inc. v. Allen Bros. Wholesale Distributors, Inc. et al.*, Docket No. L-834-07. That lawsuit has twenty-eight named defendants. All four of the defendants in this case are also defendants in the New Jersey litigation.

Zucca asserted claims in the New Jersey litigation for violation of: (1) the Delaware Unfair Cigarette Sales Act, 6 Del. C. §§ 2601 – 2608, (2) the New Jersey Unfair Cigarette Sales Act, N.J. Stat. Ann. §§ 56:7-18 – 56:7-38, and (3) the Pennsylvania Cigarettes Sales and Licensing Act, 72 Pa. Stat. Ann. §§ 202-A – 231-A. As in this case, Cooper-Booth moved to dismiss the statutory claims on the ground that

3

the Delaware, New Jersey, and Pennsylvania statutes were preempted by the Sherman Act. Following the filing of Cooper-Booth's motion but before oral argument, the New Jersey court dismissed the Delaware and Pennsylvania claims on comity grounds. On December 15, 2006, the Honorable Anne McDonnell, P.J.Cv. denied Cooper-Booth's motion without prejudice, finding that there was a fact issue that precluded the Court from determining whether the New Jersey UCSA was saved from preemption by reason of the state action immunity doctrine enunciated in *Parker v. Brown*, 317 U.S. 341 (1943). The New Jersey court directed that the parties conduct limited discovery on the issue of "active supervision" and that Cooper-Booth refile its motion.

Cooper-Booth did refile its motion, but then subsequently withdrew it after the Supreme Court's decision in *Leegin*. In January 2008, however, Cooper-Booth filed a motion for partial summary judgment contending that, irrespective of *Leegin*, the New Jersey UCSA was a horizontal restraint that is preempted by the Sherman Act. The New Jersey court has scheduled oral argument on Cooper-Booth's summary judgment motion for March 19, 2008.

110018.00602/30327177v.1

## SUMMARY OF ARGUMENT

The Delaware Unfair Cigarette Sales Act ("UCSA"), 6 Del. C. §§ 2601 – 2608, is preempted by Section 1 of the Sherman Act, 15 U.S.C. § 1.  All three pre-requisites for finding Sherman Act preemption are present:

- First, the UCSA requires wholesalers to use a common formula to determine the minimum price at which they may sell their cigarettes.  Industrywide pricing of products by competitors in accordance with a common formula is horizontal price fixing and is a *per se* violation of the Sherman Act.

- Second, the UCSA is a "hybrid," as opposed to a "unilateral," restraint.  That is, although the UCSA imposes minimum resale prices upon wholesalers, private parties, not the State of Delaware, actually determine what those minimum prices are.

- Third, the state action immunity doctrine does not save the UCSA from preemption, because the State of Delaware does not "actively supervise" the setting of the wholesalers' minimum resale prices for cigarettes.

5

## STATEMENT OF FACTS

Zucca and the defendants, including Defendant Cooper-Booth, are wholesale distributors of cigarettes to convenience stores and other retail outlets in Delaware. *See* Amend. Compl. ¶¶ 6, 11.

Zucca alleges that the defendants "have sold and continue to regularly sell cigarettes below their cost and the minimum prices prescribed by applicable laws, with the intent to remove or substantially lessen competition in Delaware." *Id.* ¶ 12.

As a result, Zucca alleges that it has been "damaged by its loss to the defendants of substantial business in the form of existing and potential customers, the loss of market share, and ultimately the loss of revenue." *Id.* ¶ 14.

110018.00602/30327177v.1

## ARGUMENT

The Sherman Act preemption analysis applicable to this case is a three-step inquiry. First, the state statute must require conduct that would constitute a *per se* violation of the Sherman Act. Second, the state statute must be what the Supreme Court terms a "hybrid," as opposed to a "unilateral," restraint. Third, the Court must determine whether the state action immunity doctrine announced in *Parker v. Brown*, 317 U.S. 341 (1943), saves the state statute from preemption. *See, e.g., Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 223-24 (2d Cir. 2004); *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 206-07 (4th Cir. 2001). If not, then pursuant to the Supremacy Clause embodied in Article VI of the United States Constitution,[1] the state statute is preempted. *See Gade v. National Solid Wastes Mgmt. Assoc.*, 505 U.S. 88, 108 (1992) ("[U]nder the Supremacy Clause, from which [the] pre-emption doctrine is derived, 'any state law, however, clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.'").

With that said, Cooper-Booth brings this preemption challenge in the context of a Rule 12(c) motion for judgment on the pleadings. Similar to a Rule 12(b)(6) motion, the Court must accept Zucca's well-pleaded allegations as true. *See, e.g., Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998). However, unlike a Rule 12(b)(6) motion, the Court's inquiry is not limited to the four corners of the plaintiff's

---

[1] The Supremacy Clause reads: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. Art. VI, ¶ 2.

7

pleading to determine whether a claim has been stated. Rather, the Court's inquiry is addressed to the substantive merits of the plaintiff's stated claim. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1369 (3d ed. 2004). In that light, determining whether the UCSA is preempted by the Sherman Act is both appropriate and ripe for adjudication by way of a Rule 12(c) motion for judgment on the pleadings.

## I.     The UCSA Condones Conduct That Constitutes A *Per Se* Violation Of The Sherman Act.

### A.     Horizontal Price Restraints Are A *Per Se* Violation Of Section 1 Of The Sherman Act.

While the Supreme Court in *Leegin* ruled that the practice of ***vertical*** minimum resale price maintenance is no longer to be condemned as a *per se* violation of the Sherman Act, it reaffirmed the rule that ***horizontal*** price restraints are and remain a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[2] *See Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 127 S. Ct. 2705, 2713 (2007). *See also Texaco Inc. v. Dagher*, 547 U.S. 1, 3-4 (2006) ("Price-fixing agreements between two or more

---

[2] Section 1 of the Sherman Act provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 1.

competitors, otherwise known as horizontal price-fixing agreements, fall into the category of arrangements that are per se unlawful."). A *horizontal* restraint is an agreement between competitors at the same level of distribution to restrain trade. A *vertical* restraint, by contrast, is an agreement between firms at different levels of distribution (*e.g.*, an agreement between a wholesale supplier and a retail distributor). *See, e.g., Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 729 (1988).

This *per se* condemnation of horizontal price restraints is not limited to naked price fixing where competitors agree on a specific, fixed sales price for their goods. Rather, the Supreme Court has been clear that the *per se* condemnation includes agreements regarding any price element. As the leading antitrust treatise states:

> The per se rule generally governs not only explicit price fixing but also agreement to fix a "price element," which may include things such as (a) terms of financing (¶b); (b) the "grace period" between delivery and the payment due date (which is simply a form of financing) (¶b); (c) discounts, including acceptance of discount coupons (¶c); (d) rebates (¶c); (e) formulas to be used for determining the price, such as relative value scales and similar arrangements (¶d); and willingness to entertain competitive bids (¶e). In sum, "price element" is defined broadly to include any term of sale that can be regarded as affecting the price that the customer must pay or any mechanism such as a formula by which the price may be computed.

XIX Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis o Antitrust Principles and Their Application* ¶ 2022 at 168-69 (Rev. ed. 1997).

As the above indicates, one such condemned practice under Section 1 of the Sherman Act is agreements to use a common formula to calculate prices.

9

**B.    The UCSA Establishes A Formula That All Wholesalers Must Use To Calculate Their Minimum Resale Prices For Cigarettes.**

The UCSA does not establish fixed, uniform prices. What it does is provide a formula that wholesalers must use to determine the floor or minimum resale price for their cigarettes. The UCSA does this through its definition of "cost to the wholesaler." It prohibits wholesalers from selling cigarettes at less than "cost to the wholesaler." *See* 6 Del. C. § 2601. The UCSA defines "cost to the wholesaler" as follows:

> "Cost to the wholesaler" means the basic cost of cigarettes to the wholesaler plus a markup to cover the cost of doing business by the wholesaler, including cartage to the retailer. . . .

*See* 6 Del. C. § 2602(4).

Thus, the UCSA's definition of "cost to the wholesaler" translates into the following formula:

$$\begin{array}{r} \text{"Basic Cost of Cigarettes"} \\ +\quad \underline{\text{"Cost of Doing Business"}} \\ \text{"Cost to the Wholesaler"} \end{array}$$

*See* 6 Del. C. § 2602(4).

The "basic cost of cigarettes," in turn, is defined as the manufacturer's invoice price less all discounts:

> "Basic cost of cigarettes" means the invoice cost of cigarettes to the wholesaler, or the replacement cost of cigarettes to the wholesaler (i.e., the cost for which cigarettes could have been bought by the wholesaler at any time within 30 days prior to the date of sale by the wholesaler if bought in the same quantity as the last purchase made by the wholesaler), whichever is lower, plus in-freight charges not otherwise included in invoice or replacement cost, less all trade discounts and the usual and customary 2 percent cash discount, plus the full face value of any cigarette taxes payable on cigarettes sold.

10

*See* 6 Del. C. § 2602(1). And the "cost of doing business," in turn, is presumed to be 5%

of the "basic cost of cigarettes":

> In the absence of satisfactory proof of a lesser cost of doing
> business by any wholesaler, the cost of doing business shall be
> presumed to be 5 percent of the basic cost of cigarettes to the
> wholesaler. . . .

*See* 6 Del. C. § 2602(1).

Because both the "basic cost of cigarettes" and the "cost of doing business" are

defined in terms of the manufacturer's invoice price, the formula for determining the

"cost to the wholesaler" (*i.e.*, the wholesaler's minimum resale price) is for all practical

purposes determined by the manufacturer's invoice price:

> "Basic Cost of Cigarettes" (Manufacturer's Invoice Price)
> +    "Cost of doing business" (5% of the "Basic Cost of Cigarettes" (Manufacturer's Invoice Price))
> "Cost to the Wholesaler"

This formula that the wholesalers are required to use to determine their minimum

resale prices is a form of horizontal price fixing prohibited by the Sherman Act. As the

Supreme Court made clear in *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150

(1940), price fixing is not limited to the establishment of fixed, uniform prices between

competitors. It encompasses any agreement relating to prices. In that case, there was an

agreement among competitors to engage in a program of buying surplus gasoline on the

spot market in order to bolster and prevent their resale prices from collapsing due to

excess supply on the market. The defendants argued that they did not fix prices "in the

sense they were uniform and inflexible." *Id.* at 222. The Supreme Court rejected their

argument, stating:

> An agreement to pay or charge rigid, uniform prices would be an
> illegal agreement under the Sherman Act. But so would

11

> agreements to raise or lower prices whatever machinery for price
> fixing was used.

*Id.* Prices are fixed for purposes of the Sherman Act, the Supreme Court said, "if the

range within which purchases or sales will be made is agreed upon, if the prices paid or

charged are to be at a certain level or on ascending or descending scales, if they are to be

uniform, *or if by various formulae they are related to the market prices.* They are fixed

because they are agreed upon." *Id.* at 222 (emphasis added).

Here, the UCSA provides a formula that is to be used by wholesalers to determine

their minimum resale prices. That is price fixing, as the formula, not market forces,

determines the minimum prices wholesalers may charge. As the Supreme Court has

stated before, "[p]rice is the 'central nervous system of the economy,' and an agreement

that 'interfere[s] with the setting of price by free market forces' is illegal on its face."

*National Society of Professional Engineers v. United States*, 435 U.S. 679, 692 (1978)

(citations omitted).

The fact the formula only sets the floor or minimum price that wholesalers may

charge does not save the UCSA. Establishing a minimum sales price or floor beneath

which competitors may not price their goods is still price fixing under the Sherman Act.

The Supreme Court made this clear in *Goldfarb v. Virginia State Bar*, 421 U.S. 773

(1975), where it held a county bar association's fee schedule of minimum prices for

common legal services constituted price fixing under the Sherman Act. *Id.* at 776.

Wholesalers are required to use the UCSA's formula to determine the minimum

resale prices they may charge. That is horizontal price fixing, and it is a *per se* violation

of the Sherman Act.

12

**II.    The UCSA Is A "Hybrid" Restraint.  Private Actors Are Granted A Degree Of Private Regulatory Power In Setting Wholesalers' Minimum Resale Prices.**

**A.    A "Hybrid" Restraint Is A State Statute That *Imposes* A Price Restraint, But Leaves To Private Parties The Job Of *Setting* The Actual Dollar Amount Of That Price Restraint.**

In the Sherman Act preemption analysis, the Supreme Court distinguishes between state statutes that are "unilateral" restraints and state statutes that are "hybrid" restraints.  Only the latter are subject to preemption by the Sherman Act.  *See Fisher v. City of Berkeley*, 475 U.S. 260, 267-68 (1986).

There are four Supreme Court opinions that address the issue of "hybrid" restraints.  The deciding factor in all four of those cases that caused the Supreme Court to categorize the state statute as being either a "unilateral" restraint or a "hybrid" restraint was ***whether the State set the actual dollar amount of the price restraint imposed by the statute.***  Put simply, a state statute that both *imposes* a price restraint and *sets* the actual dollar amount of the price restraint is a unilateral restraint.  By contrast, a statute that simply *imposes* a price restraint but leaves it to private parties to *set* the actual dollar amount of the price restraint is a "hybrid" restraint.  The analysis set forth below of the four Supreme Court cases that have addressed this issue reflect the decisive impact of this factor.

**1.    *Schwegmann Bros. v. Calvert Corp.*, 341 U.S. 384 (1951).**

*Schwegmann* involved a Louisiana statute that authorized liquor distributors to enforce agreements fixing retail prices not only against parties to such contracts, but also against retailers who sold the distributors' products without having agreed to the price

13

restrictions. The Supreme Court found the two liquor distributors in that case had

violated the Sherman Act when they attempted to hold a retailer to the price-fixing terms

of a contract it had refused to sign. "[W]hen a state compels retailers to follow a parallel

price policy, it demands private conduct which the Sherman Act forbids." *Id.* at 389. In

later interpreting *Schwegmann*, the Supreme Court characterized the Louisiana statute in

that case as being a hybrid restraint because of the supplier's involvement in setting the

retailers' resale prices:

> While the petitioner-retailer in that case may have been legally
> required to adhere to the [price] levels so selected, *the involvement
> of his suppliers in **setting those prices** made it impossible to
> characterize the regulation as unilateral action by the State of
> Louisiana.*

*Fisher*, 475 U.S. at 268 (emphasis added).

### 2.    *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980).

In this case, the Supreme Court condemned a California liquor law as a hybrid

restraint because it too entailed a degree of free participation by private actors in setting

their dealers' minimum resale prices. The California law in that case required that all

wine producers, wholesalers, and rectifiers file fair trade contracts or price schedules with

the State. If a wine producer did not set prices, wholesalers had to post a resale price

schedule for that producer's brands. No state-licensed wine merchant could sell wine to a

retailer at other than the posted price. *See id.* at 99. The Court found that "California's

system for wine pricing plainly constitute[d] resale price maintenance in violation of the

Sherman Act." *Id.* at 103. "The wine producer holds the power to prevent price

competition by dictating the prices charged by wholesalers." *Id.*

14

The decisive factor that caused the Supreme Court to conclude that the California statute was a hybrid as opposed to a unilateral restraint was that the State did not set the *actual* wine prices; the vintners set the prices. *See id.* at 100. "[T]he mere existence of legal compulsion [that is, the state statute requiring price setting] did not turn California's scheme into unilateral action by the State." *Fisher*, 475 U.S. at 268 (discussing *Midcal*).

### 3. *Fisher v. City of Berkeley*, 475 U.S. 260 (1986).

*Fisher* is the only Supreme Court case where the Court found the law at issue to be a unilateral restraint. The reason the Supreme Court reached that conclusion in *Fisher* was because all pricing discretion was removed from private actors. The State alone calculated the *actual* price restraint — in that case a city ordinance imposing a rent ceiling — and not private actors.

In *Fisher*, the City of Berkeley enacted a rent stabilization ordinance that required landlords to adhere to prescribed rent ceilings. *Id.* at 262-63. Important to the Court's decision was the fact that the actual rent ceilings were set by the City. *See id.* at 262. That is, unlike in *Schwegmann* or *Midcal*, the ordinance did not leave it up to private actors (*i.e.*, the landlords) to calculate what the actual rent ceilings would be. A landlord could only raise his rents pursuant to an annual adjustment made by the City's Rent Stabilization Board or after petitioning the Board for an individual adjustment. *See id.* In all instances though, the Board decided what the rent ceiling would be.

A group of landlords sued the City of Berkeley, contending the ordinance was a *per se* price fixing violation. *See id.* at 263. The Supreme Court rejected the landlords' challenge because the ordinance was a unilateral, not a hybrid, restraint. "Hybrid

15

restraints," the Court noted, are those where "nonmarket mechanisms [*i.e.*, statutes] merely enforce private marketing decisions." *Id.* at 267-68. "Where private actors are thus granted 'a degree of private regulatory power,' the regulatory scheme may be attacked under [the Sherman Act]." *Id.* at 268.

In the case before it, however, the Court noted that the City of Berkeley *alone* controlled and dictated what the landlords' maximum rent levels would be: "Under Berkeley's Ordinance, control over the maximum rent levels of every affected residential unit has been unilaterally removed from the owners of those properties and given to the Rent Stabilization Board." *Id.* at 267.

Because it was the City that actually determined what the landlords' maximum rent levels would be, the Court concluded that the restraint was a unilateral one, in contrast to the statutes condemned as hybrid restraints in *Schwegmann* and *Midcal* where, although the price restraints (in those cases, minimum resale prices) were statutorily mandated, private actors were involved in setting them:

> The hybrid restraints condemned in *Schwegmann* and *Midcal* were thus quite different from the pure regulatory scheme imposed by Berkeley's Ordinance. While the Ordinance does give tenants — certainly a group of interested private parties — some power to trigger the enforcement of its provisions, *it places complete control over maximum rent levels **exclusively** in the hands of the Rent Stabilization Board.* Not just the controls themselves but also the rent ceilings they mandate have been unilaterally imposed on the landlords by the city.

*Id.* at 269 (emphasis added).

4.    *324 Liquor Corp. v. Duffy*, 479 U.S. 335 (1986).

*Duffy* involved a challenge to a state statute that is the most analogous to the UCSA. Similar to the UCSA, the New York statute at issue in *Duffy* prohibited retailers of liquor from selling below "cost." *Id.* at 339. "Cost" was defined as "the price of such item of liquor to the retailer plus twelve percentum of such price." *Id.* "Price," in turn, was "defined as the posted bottle price in effect at the time the retailer sells or offers to sell the item." *Id.* at 338-39. Thus, similar to the formula in the UCSA, a retailer's minimum resale price was determined in reference to his or her supplier's "posted bottle price" plus a certain percentage markup. The result of the New York statutory scheme, the Supreme Court concluded, was that liquor wholesalers were able to fix their retailers' resale prices:

> The New York retail pricing system thus permits wholesalers to set retail prices, and retail markups, without regard to actual retail costs. . . . The effect of this complex of statutory provisions and regulations is to permit wholesalers to maintain retail prices at artificially high levels.

*Id.* at 340. Wholesalers, not the State, established the posted prices and, in turn, the retailers' minimum resale prices. Given that fact, there was no issue in concluding that the New York statute was a hybrid restraint, because "private actors" were "granted 'a degree of private regulatory power.'" *Id.* at 345 n. 8.

**B.    Wholesalers' Minimum Resale Prices Are Not Set By The State Of Delaware But By Private Actors.**

In light of the above analysis, there can be no doubt that the UCSA is a hybrid restraint. Private parties set the wholesalers' minimum resale prices. Every element of

17

the formula established by the UCSA for calculating wholesalers' minimum resale prices is based upon and defined in terms of the cigarette manufacturer's invoice price:

> "Basic Cost of Cigarettes" (Manufacturer's Invoice Price)
> + "Cost of Doing Business" (5% of the "Basic Cost of Cigarettes" (Manufacturer's Invoice Price))
> Wholesaler's Minimum Resale Price

As the formula demonstrates, the State of Delaware plays no role in setting the wholesalers' *actual* minimum resale prices. The numbers used in that formula are all based off of the cigarette manufacturer's invoice price. Consequently, the cigarette manufacturers, by raising or lowering their invoice prices, control the formula to determine their wholesalers' minimum resale prices. It can be no clearer. The UCSA is a hybrid restraint.

The Supreme Court's decision in *Duffy* dispels all possible doubt with that conclusion. Like the New York statute in *Duffy*, the UCSA does not set the actual minimum resale prices. Rather, like the statute in *Duffy*, the UCSA establishes a statutory formula that incorporates the manufacturers' invoice price as the basis for calculating the wholesalers' minimum resale prices. As in *Duffy*, the result is that manufacturers can set their wholesalers' minimum resale prices. The inescapable legal conclusion then, is that, just like the New York statute in *Duffy*, the UCSA is a hybrid restraint.

## III. The State Action Antitrust Immunity Doctrine Does Not Save The UCSA From Preemption. Delaware Does Not "Actively Supervise" The Setting Of Wholesalers' Minimum Resale Prices.

In *Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court carved out a limited preemption exception to the antitrust laws known as the state action antitrust immunity

110018.00602/30327177v.1

doctrine.  Founded on federalism concerns, it immunizes from federal antitrust scrutiny

private conduct that is compelled by State regulation:

> We find nothing in the language of the Sherman Act or in its
> history which suggests that its purpose was to restrain a state or its
> officers or agents from activities directed by its legislature.  In a
> dual system of government in which, under the Constitution, the
> states are sovereign, save only as Congress may constitutionally
> subtract from their authority, an unexpressed purpose to nullify a
> state's control over its officers and agents is not lightly attributed
> to Congress.

*Id.* at 350-51.

The immunity is limited, however.  "'[A] state statute does not give immunity to

those who violate the Sherman Act [simply] by authorizing them to violate it, or by

declaring that their action is lawful.'"  *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 344

(1987) (citation omitted).  Rather, the Supreme Court has developed a two-part test to

determine whether immunity is appropriate:

> First, the challenged restraint must be "one clearly articulated and
> affirmatively expressed as state policy"; second, the policy must be
> "actively supervised" by the State itself.

*California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105

(1980).

The UCSA does not pass the "active supervision" prong of this test.

"[T]he active supervision requirement mandates that the State exercise ultimate

control over the challenged anticompetitive conduct.  The mere presence of some state

involvement or monitoring does not suffice.  The active supervision prong . . . requires

that state officials have and exercise power to review particular anticompetitive acts of

private parties and disapprove those that fail to accord with state policy.  Absent such a

110018.00602/30327177v.1

program of supervision, there is no realistic assurance that a private party's

anticompetitive conduct promotes state policy, rather than merely the party's individual

interests." *Patrick v. Burget*, 486 U.S. 94, 100 (1988) (citations omitted).

    In cases involving statutory schemes that require minimum resale price

maintenance, the Supreme Court's precedent teaches that "active supervision" requires

no less than complete control of the pricing process by the State by either:

    (1)    the State itself setting the resale price; or

    (2)    through some process of active review and approval of the price
           established by private parties.

*See, e.g., Ticor Title Ins. Co. v. Federal Trade Commission*, 998 F.2d 1129, 1139 (3d Cir.

1993) ("The Supreme Court . . . expressly declared that when prices are initially set by

private parties, the person claiming immunity must show that the state undertook steps to

evaluate the rate setting scheme.").

    In *Midcal* for example, the California law at issue there prohibited wine

merchants from selling wine at prices less than that established by the wine producers.

Because California did not exercise direct control over the resulting prices set by the

private actors, and did not review the reasonableness of the prices, the Supreme Court

concluded there was no "active supervision":

> The State simply authorizes price setting and enforces the prices
> established by private parties. The State neither establishes prices
> nor reviews the reasonableness of the price schedules . . . . The
> State does not monitor market conditions or engage in any
> "pointed examination" of the program. The national policy in
> favor of competition cannot be thwarted by casting such gauzy
> cloak of state involvement over what it essentially a private price-
> fixing agreement. As *Parker* teaches, "a state does not give

20

> immunity to those who violate the Sherman Act by authorizing
> them to violate it, or by declaring their action is lawful . . . ."

*Midcal*, 445 U.S. at 105-06.

The Court reached the same result in *324 Liquor Corp. v. Duffy*, 479 U.S. 335

(1987). New York required liquor retailers to charge a minimum retail price of 112

percent of the wholesaler's "posted price." Again, there was no "active supervision," the

Court explained, because New York merely enforced the prices set by the wholesalers

and did nothing to review or establish those prices:

> New York's liquor-pricing scheme is not actively supervised by
> the State. As in *Midcal*, the State "simply authorizes price setting
> and enforces the prices established by private parties." New York
> "neither establishes prices nor reviews the reasonableness of the
> price schedules." New York "does not monitor market conditions
> or engage in any 'pointed reexamination' of the program." Each
> wholesaler sets its own "posted" prices; the State does not control
> month-to-month variations in posted prices. Nor does the State
> supervise the wholesaler's decision to "post off," the amount of the
> "post off," the corresponding decrease, if any, in the bottle price,
> or the frequency with which a wholesaler posts off. The State has
> displaced competition among liquor retailers without substituting
> an adequate system of regulation.

*Id.* at 344-45 (citations omitted).

As in *Midcal* and *Duffy*, wholesalers' minimum resale prices, though imposed by

the UCSA, are set by private parties (the cigarette manufacturers) and not by the State of

Delaware. Moreover, once set, Delaware does not review or otherwise approve the prices

before they go into effect. This is not "actual supervision." There is no State check on

the parties' price-setting discretion; no "independent judgment and control so that the

details of the rates or prices have been established as a product of deliberate state

21

intervention, [and] not simply by agreement among private parties." *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 634-35 (1992).

Accordingly, as in *Midcal* and *Duffy*, "actual supervision" is lacking. The UCSA simply authorizes the setting of minimum resale prices and enforces the prices established by private parties. Nothing in the UCSA directs the State of Delaware to take affirmative steps to independently and actively review, supervise, or otherwise police the setting of wholesalers' minimum resale prices. The state action antitrust immunity doctrine, therefore, does not apply, and consequently the UCSA is preempted by Section 1 of the Sherman Act.

22

## CONCLUSION

For all of the foregoing reasons, Defendant Cooper-Booth Wholesale Company's Motion for Partial Judgment on the Pleadings to dismiss Plaintiff L.J. Zucca, Inc.'s claims brought in Count I of the First Amended Verified Complaint for violations of the Delaware Unfair Cigarette Sales Act, 6 *Del. C.* §§ 2601 – 2608, should be **GRANTED.** Pursuant to the Supremacy Clause in Article VI of the United States Constitution, the UCSA is preempted by Section 1 of the Sherman Act.  Count I of Plaintiff L.J. Zucca, Inc.'s Amended Complaint should, therefore, be **DISMISSED.**

Respectfully submitted,

**BLANK ROME LLP**

Dated: March 12, 2008

Christine S. Azar, Esquire (I.D. No. 4170)
1201 Market Street, Suite 800
Wilmington, DE 19801
Phone: (302) 425-6400
Fax      (302) 425-6464

and

Stephen M. Orlofsky, Esquire
Kit Applegate, Esquire
210 Lake Drive East, Suite 200
Woodland Falls Corporate Park
Cherry Hill, New Jersey 08002
Phone: (856) 779-3600
Fax:     (856) 779-7647

Attorneys for Defendant
Cooper-Booth Wholesale Company

23

110018.00602/30327177v.1

## CERTIFICATE OF SERVICE

I, Christine S. Azar, Esquire, certify that on March 12, 2008, I served a copy of

**Defendant Cooper-Booth Company's Brief in Support of Its Motion for Partial Judgment**

**on the Pleadings** upon the following counsel in the manner indicated below:

### VIA ELECTRONIC SERVICE

Michael F. Bonkowski
Kimberly M. Large, Esquire
Saul Ewing LLP
222 Delaware Ave., Suite 1200
P.O. Box 1266
Wilmington, DE  19899
Attorneys for Plaintiff
L.J. Zucca, Inc.

James W. Semple, Esquire
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
PO Box 2306
Wilmington, DE  19899
Attorneys for Defendant
Allen Bros. Wholesale Distributors, Inc.

David E. Brand, Esquire
PRICKETT, JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, DE  19899
Attorneys for Defendant
Eby-Brown Company, LLC

David S. Eagle, Esquire
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP
919 Market Street, Suite 1000
Wilmington, DE  19801
Attorneys for Defendant
Western Skier, Ltd. f/k/a Klein Candy Co., LP

Christine S. Azar
I.D. No. 4170

110018.00602/30327177v.1