# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| L.J. ZUCCA, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 1:07-cv-00002 (JJF) |
| | : | |
| v. | : | |
| | : | Removed from Chancery Court |
| ALLEN BROS. WHOLESALE | : | New Castle County, Delaware |
| DISTRIBUTORS INC.; COOPER-BOOTH | : | C.A. No. 2572-N |
| WHOLESALE COMPANY; EBY-BROWN | : | |
| COMPANY LLC; and WESTERN SKIER, | : | JURY TRIAL DEMANDED |
| LTD. F/K/A KLEIN CANDY CO. LP, | : | Oral Argument Requested |
| | : | |
| Defendants. | : | |

## L.J. ZUCCA, INC.'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANT COOPER-BOOTH WHOLESALE COMPANY'S MOTION
## FOR PARTIAL JUDGMENT ON THE PLEADINGS

**SAUL EWING LLP**
Candice Toll Aaron (DE ID No. 4465)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800 (Phone)
(302) 421-6813 (Fax)
caaron@saul.com

-and-

Daniel R. Chemers
W. Damon Dennis
Pervis Chris Lee
Lockwood Place
500 East Pratt Street, Suite 900
Baltimore, MD 21202-3171
(410) 332-8600 (Phone)
(410) 332-8862 (Fax)
dchemers@saul.com
ddennis@saul.com
plee@saul.com

*Counsel for L.J. Zucca, Inc.*

Dated: April 15, 2008

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 2

STATEMENT OF FACTS .............................................................................................. 3

ARGUMENT ..................................................................................................................... 4

    I.     COOPER-BOOTH'S PREEMPTION CHALLENGE IS NOT
           JUSTICIABLE ................................................................................................. 4

    II.    COOPER-BOOTH'S PREEMPTION CHALLENGE IS
           MERITLESS ..................................................................................................... 5

          A.    The Distinctions Between Vertical And Horizontal
                Price-Fixing ....................................................................................... 6

          B.    The Nature And Purpose Of Delaware's Regulatory
                Regime ................................................................................................ 8

          C.    The UCSA Does Not Mandate Horizontal Price-Fixing
                By Wholesalers ................................................................................. 9

                1.    There Is No "Hybrid" Restraint Involving
                      Wholesalers ........................................................................ 10

                2.    There Is No Conduct Constituting A Horizontal
                      Price-Fix ............................................................................. 12

                  3.    Delaware's Dictation Of Minimum Prices
                      Requires No Further State Supervision ......................... 14

                4.    Cooper-Booth's Fundamental Fallacy ........................... 15

CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*324 Liquor Corp. v. Duffy,*
    479 U.S. 335 (1987) ..................................................................................10, 11

*A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.,*
    263 F.3d 239 (3d Cir. 2001) ......................................................................5, 9, 16

*California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.,*
    445 U.S. 97 (1980) .......................................................................9, 10, 12, 13, 16

*Continental T. V., Inc. v. GTE Sylvania Inc.,*
    433 U.S. 36 (1977) ..............................................................................................7

*Fisher v. City of Berkeley,*
    475 U.S. 260 (1986) ...........................................................5, 11, 12, 13, 14, 17

*Forrest City Grocery Co. v. Tennessee Dept. of Revenue,*
    917 S.W.2d 247 (Tenn. Ct. App. 1995).........................................................5, 15

*Hodel v. Indiana,*
    452 U.S. 314 (1981) ............................................................................................4

*Jetro Cash & Carry Enters., Inc. v. New York State Dept. of Taxation,*
    605 N.Y.S.2d 538 (N.Y. App. Div. 1993)......................................................5, 15

*Isaksen v. Vermont Castings,*
    825 F.2d 1158 (7th Cir. 1987) ............................................................................6

*Leegin Creative Leather Products, Inc. v. PSKS,*
    127 S.Ct. 2705 (2007)...................................................................................2, 6, 7

*Mariana v. Fisher,*
    338 F.3d 189 (3d. Cir. 2003) .....................................................................5, 9, 16

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,*
    107 F.3d 1026 (3d. Cir. 1997)
    *cert. denied,* 522 U.S. 907 (1997)............................................................5, 9, 16

*NUI Corp. v. Kimmelman,*
    765 F.2d 399 (3d Cir. 1985) ...............................................................................4

*Patrick v. Burget,*
    486 U.S. 94 (1988) .....................................................................................5, 9, 16

*Rice v. Norman Williams Co.,*
    458 U.S. 659 (1982) ............................................................................................9

*Schwegmann Brothers v. Calvert Distillers Corp.,*
    341 U.S. 384 (1951) ..........................................................................................10

*Sincock v. Gately,*
    262 F.Supp. 739 (D.C. Del. 1967)......................................................................2

*Stroud v. Milliken Enterprises, Inc.*,
    552 A.2d 476 (Del. 1989)...................................................................................4

*TEC Cogeneration Inc. v. Florida Power & Light Co.*,
    76 F.3d 1560 (11th Cir.1996) ...............................................5, 9, 16

*Town of Hallie v. City of Eau Claire*,
    471 U.S. 34 (1985) .................................................................5, 9, 16

*U.S. v. Brown University in Providence in State of R.I.*,
    5 F.3d 658, 669 (3d. Cir. 1993). ...........................................................7

*United States v. Parke, Davis & Co.*,
    362 U.S. 29 (1960) ...............................................................................6

*United States v. Trenton Potteries Co.*,
    273 U.S. 392 (1927) .............................................................................7

## FEDERAL STATUTES

15 U.S.C.A. § 1 (2004)................................................................................5

## STATE STATUTES

6 *Del. C.* §§ 2601, *et. seq.*...........................................................passim

6 *Del. C.* § 2602(4) ..............................................................................3, 8

## OTHER AUTHORITES

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: *An Analysis of Antitrust
    Principles and Their Application* (2006) (Vol. I. and I.A.)......................11, 13, 14, 15, 16

Defendant Cooper-Booth Wholesale Company ("Cooper-Booth") has mislabeled its recent submission as a Motion for Partial Judgment on the Pleadings. In fact, Cooper-Booth is moving for partial summary judgment on its affirmative defense that the Delaware Unfair Cigarette Sales Act has been preempted by federal law. Cooper-Booth's motion for partial summary judgment is neither justiciable nor does it have potential substantive merit, and Plaintiff L.J. Zucca, Inc. ("Zucca"), by and through its undersigned counsel, respectfully asks that it be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

On November 22, 2006, Zucca filed a Verified Complaint against four defendants, including Cooper-Booth in the Court of Chancery. In that Complaint, Zucca alleged, in pertinent part, that Cooper-Booth had violated the Delaware Unfair Cigarette Sales Act, 6 *Del. C.* §§ 2601, *et. seq.* ("UCSA"). On January 3, 2007, Cooper-Booth removed the matter from the Court of Chancery to this Court.

On January 8, 2007, Plaintiff filed its First Amended Verified Complaint (the "Complaint") in this Court. Cooper-Booth answered the Complaint (the "Answer") on January 23, 2007, denying that it had violated the UCSA. In the Answer, Cooper-Booth's additional defense number ten asserted that the UCSA was preempted by federal law.

On January 23, 2007, Cooper-Booth filed a Motion for Partial Judgment on the Pleadings, seeking to dismiss Count I of the Complaint on the grounds that the UCSA was preempted because it mandated vertical price-fixing, a *per se* violation of the Sherman Act.[1] On March 12, 2008, Cooper-Booth withdrew that motion after the Supreme Court's decision in

---

[1]        15 U.S.C. §§ 1, *et. seq.*

*Leegin Creative Leather Products, Inc. v. PSKS*,[2] which held that vertical price-fixing was no longer a *per se* violation of the Sherman Act.

On March 12, 2008, Cooper-Booth filed the pending Motion, replacing its earlier preemption position with the proposition that the UCSA mandated horizontal price-fixing by wholesalers. Cooper-Booth filed no affidavit or other material in support of its Motion. In opposing the Motion, Zucca is filing herewith the Affidavit of Charles Leffler to provide the Court with pertinent background information. *See* Leffler Affidavit, attached as Exhibit 1.[3]

## SUMMARY OF ARGUMENT

Zucca has sued Cooper-Booth for violating the UCSA, a Delaware statute. Zucca has no obligation to prove in its case in chief that the UCSA is a valid and enforceable piece of legislation. *See Sincock v. Gately*, 262 F.Supp. 739, 843 (D.C. Del. 1967) ("every state statute is clothed with the presumption of constitutional validity") (citing *Davis v. Department of Labor*, 317 U.S. 249 (1942); *Salsburg v. State of Maryland*, 346 U.S. 545 (1954)). If Cooper-Booth wants to challenge the enforceability of that statute on federal preemption or other grounds, it has an obligation to bring to this Court a ripe and justiciable controversy with adequate factual development. Cooper-Booth has failed to do that, and for this reason alone the pending Motion should be denied (Argument I).

While prudential factors weigh against this Court issuing an advisory opinion on a federal preemption issue, Zucca will nonetheless demonstrate why Cooper-Booth's preemption argument is meritless. Here, Cooper-Booth contends that the UCSA mandates horizontal price-fixing among wholesalers because it obliges wholesalers to obey a minimum price established

---

[2] 127 S. Ct. 2705 (2007).

[3] The Affidavit of Charles Leffler is cited to herein as "Leffler Aff. at ¶ ___."

under the UCSA formula. The State itself established that formula and chose the elements to be used in that formula. The State gave wholesalers no ability to affect, jointly or otherwise, the statutory minimums. The wholesalers are simply told to charge no less than a price that is statutorily determined, which is not a horizontal agreement among competitors to fix prices and is not a basis for a preemption challenge (Argument II).

## STATEMENT OF FACTS

The relevant facts are set forth in the Complaint and the Affidavit of Charles Leffler, and are briefly summarized here.

Zucca charges that Cooper-Booth and the other defendants have willfully and routinely violated the UCSA. *See* Amend. Compl. at ¶ 32 [D.I. 6]. The UCSA became the law of Delaware in 1953. It reflects the public policy of Delaware. In the UCSA, Delaware prohibited wholesalers from charging less than State-mandated minimum prices ("statutory minimums") when they sold cigarettes to retailers. Delaware specified in the UCSA the particular formula to be used in calculating the statutory minimums, and the various inputs to be used in that formula. *See* 6 *Del. C.* § 2602(4).

Delaware chose to include in its minimum price formula the invoice prices that cigarette manufacturers charged wholesalers, thereby permitting the statutory minimums to flex with each manufacturer's price changes over time. *See* 6 *Del. C.* § 2602(4). Each cigarette manufacturer establishes its own invoice prices for each of its cigarette brands in accordance with prevailing market conditions. Leffler Aff. at ¶ 4. Each cigarette manufacturer presents its invoice prices to wholesalers on a take-it or leave-it basis. *Id.* The UCSA does not regulate cigarette manufacturer pricing. *See generally,* 6 *Del. C.* §§ 2601, *et. seq.*; Leffler Aff. at ¶ 5.

Cigarette wholesalers have no ability, either individually or collectively, to affect the UCSA's statutory minimums. Leffler Aff. at ¶ 6. Those minimums are the State's directives. Leffler Aff. at ¶ 5.

**ARGUMENT**

I.    **COOPER-BOOTH'S PREEMPTION CHALLENGE IS NOT JUSTICIABLE**

Zucca charges that Cooper-Booth violated the UCSA. Cooper-Booth denies that it did. By way of affirmative defense, Cooper-Booth asserts that even if it violated the UCSA it should not be liable because the UCSA is preempted by the Sherman Act. *See* Cooper-Booth's Answer at ¶ 10, filed on January 10, 2007. Cooper-Booth's pending Motion asks this Court to assume (despite its denial) that it violated the UCSA and, on that hypothetical basis, to issue a partial summary judgment holding that a Delaware statute is unenforceable.

It is well established that courts should avoid ruling on issues of statutory enforceability on a premature basis. *See Hodel v. Indiana*, 452 U.S. 314, 335-36 (1981); *NUI Corp. v. Kimmelman*, 765 F.2d 399, 403-04 (3d Cir. 1985) ("[C]ourts should avoid whenever possible premature adjudication that duly enacted legislation is unconstitutional....[t]he undesirability of foreclosing the future to a legislature, state or federal, has prompted the Supreme Court to develop doctrines of standing to challenge the constitutionality of statutes"); *see generally, Stroud v. Milliken Enterprises, Inc.*, 552 A.2d 476, 479 (Del. 1989) ("Delaware law is well settled that ... [courts do not] ... 'entertain suits seeking an advisory opinion or an adjudication of hypothetical questions'"). Here, Cooper-Booth has not shown that the undisputed facts establish that it violated the UCSA. As the issue of preemption will ripen and be suitable for summary judgment only when and if the trier finds that Cooper-Booth has violated the UCSA, Cooper-Booth's request for a ruling on its preemption defense is premature.

II.    **COOPER-BOOTH'S PREEMPTION CHALLENGE IS MERITLESS**

Cooper-Booth is challenging a statute that has been on the books in Delaware since 1953. It is essentially the same statute that exists, with limited variations, in 25 states. It is a statute that has twice been <u>unsuccessfully</u> challenged as mandating vertical price-fixing.[4] There is no indication that anyone other than Cooper-Booth has ever contended that the UCSA mandates horizontal price-fixing among wholesalers. But Cooper-Booth is now making this meritless argument and Zucca must therefore respond.

Critically, Cooper-Booth fails to recognize that, on a preemption challenge, the sole private parties whose conduct is relevant are the parties that have been statutorily freed from the constraints of competition and have allegedly been statutorily authorized to engage in a *per se* antitrust violation. *See Patrick v. Burget,* 486 U.S. 94, 100 (1988); *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 46 (1985); *Mariana v. Fisher,* 338 F.3d 189, 203 (3d. Cir. 2003); *A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.*, 263 F.3d 239, 248 (3d Cir. 2001); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 107 F.3d 1026, 1036 (3d. Cir. 1997), *cert. denied*, 522 U.S. 907 (1997); *TEC Cogeneration Inc. v. Florida Power & Light Co.,* 76 F.3d 1560, 1570 (11th Cir.1996). As applied here, the question is whether the UCSA authorized a group of Delaware <u>wholesalers</u>, operating on their own and without State direction, to engage in a horizontal price-fixing agreement. *See generally* 15 U.S.C.A. §1 (2004); *Fisher v. City of Berkeley,* 475 U.S. 260, 267-68 (1986). The answer is in the negative, as the undisputed facts show that the UCSA did not give wholesalers any power to fix prices.

---

[4]    *See, e.g., Jetro Cash & Carry Enters., Inc. v. New York State Dept. of Taxation,* 605 N.Y.S.2d 538 (N.Y. App. Div. 1993); *Forrest City Grocery Co. v. Tennessee Dept. of Revenue,* 917 S.W.2d 247 (Tenn. Ct. App. 1995).

At the risk of belaboring the obvious, we discuss below the distinctions between vertical and horizontal price-fixing (Part A), the nature and purpose of Delaware's regulatory regime (Part B), and the most glaring errors in Cooper-Booth's argument (Part C).

### A.    The Distinctions Between Vertical And Horizontal Price-Fixing

Cooper-Booth's prior motion challenging the UCSA was predicated on the claim that the UCSA mandated vertical price-fixing, which is also called resale price maintenance ("RPM").[5] RPM occurs when a supplier (such as a cigarette manufacturer) dictates the resale price of its customer.  RPM was considered a *per se* violation of section 1 of the Sherman Act before the Supreme Court's ruling in *Leegin*.

Section 1 of the Sherman Act outlaws joint action (contracts, combinations and conspiracies) that unreasonably restrain trade.  Before *Leegin*, when a supplier compelled a customer to adopt a resale price of the supplier's choosing, courts found the parties had combined or agreed (even though there was nothing consensual about it) to commit a *per se* vertical price-fixing violation.  *See, e.g., United States v. Parke, Davis & Co.*, 362 U.S. 29, 47 (1960) (concerted action inferred absent customer free choice); *Isaksen v. Vermont Castings*, 825 F.2d 1158, 1163 (7th Cir. 1987) ("an agreement procured by threats is still an agreement for purposes of section 1").  The guiding principle was that a supplier had <u>no</u> right to dictate its customer's resale price and that such conduct was therefore always unlawful.[6]  *Leegin*

---

[5]    *See* Cooper-Booth's Motion for Partial Judgment on the Pleadings and Brief in Support, filed on January 23, 2007.

[6]    Every supplier affects its customer's pricing, as the amount the supplier charges for its product typically affects the pricing of that product on resale.  The law of RPM does not come into play because a supplier indirectly affects its customer's pricing in this fashion, as this does not constitute "control" over downstream prices within the meaning of antitrust law or economics.  Rather, the law of RPM comes into play only when a supplier manages to exert direct control over its customer's resale pricing by using tactics that go beyond mere suggestion, thereby permitting a court to find the "joint action" required by section 1 of the Sherman Act.  *E.g., Parke, Davis & Co.*, 362 U.S. at 47.

dramatically changed the law by recognizing that manufacturers had legitimate reasons and a qualified right to control the resale prices of their customers. After *Leegin*, RPM is to be tested under the antitrust rule of reason, not the *per se* rule.[7]

Horizontal price-fixing is entirely different from RPM. It involves a consensual agreement on price among rivals at the same level of competition, not an effort by a single supplier to dictate a customer's resale prices. *E.g.*, *United States v. Trenton Potteries Co.*, 273 U.S. 392 (1927). For example, if a cartel of cigarette wholesalers in Delaware got together and agreed upon a formula that established the minimum prices they would all charge their customers, they would certainly be parties to a horizontal price-fix violative of the Sherman Act. But this is not what happened here, as it was the State of Delaware – not the cigarette wholesalers – that put into place a minimum price formula <u>and</u> dictated the elements to be used in the formula, which are elements over which cigarette wholesalers have no control.

---

[7] There is a difference between a *per se* analysis and a rule of reason analysis. As articulated by the Third Circuit:

> While the rule of reason typically mandates an elaborate inquiry into the reasonableness of a challenged business practice, there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable. Such plainly anticompetitive agreements or practices are deemed to be illegal *per se*. Business certainty and litigation efficiency are the principal salutary effects of *per se* rules. Such rules tend to provide guidance to the business community and to minimize the burdens on litigants and the judicial system of the more complex rule of reason trials. In addition to the traditional rule of reason and the *per se* rule, courts sometimes apply what amounts to an abbreviated or quick look rule of reason analysis. The abbreviated rule of reason is an intermediate standard. It applies in cases where *per se* condemnation is inappropriate, but where no elaborate industry analysis is required to demonstrate the anticompetitive character of an inherently suspect restraint.

*U.S. v. Brown University in Providence in State of R.I.*, 5 F.3d 658, 669 (3d. Cir. 1993). (internal Supreme Court citations omitted); *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49-50 (1977) (outlining difference between rule of reason and *per se* analyses).

### B.    The Nature And Purpose Of Delaware's Regulatory Regime

In an unregulated market, a wholesaler is free to charge retailers as much or as little as it wishes. If it charges too much, it will theoretically suffer in the marketplace by seeing a decline in sales volume. If it charges too little, it may increase its sales volume but will likely sacrifice profit margins. In sum, in an unregulated market a wholesaler's pricing decisions are governed by market forces.

Delaware decided, for its own purposes, that it wanted to regulate (*i.e.*, restrain) the pricing freedom of its cigarette wholesalers. More particularly, Delaware decided it did not want cigarette wholesalers to charge retailers less than what it considered the wholesaler's cost, as it believed below-cost[8] prices would, at a minimum, injure competitors and lessen competition.[9]

Delaware put into effect a simple regime to carry out its regulatory goals. It left cigarette wholesalers free to charge retailers as much as they wanted for cigarettes, but created a price floor below which a wholesaler was not permitted to sell cigarettes to a retailer. Delaware wanted its minimum permitted prices to flex with market realities, and therefore adopted a formula that uses as its starting point the current market-based invoice prices that cigarette manufacturers charge wholesalers, *i.e.*, the cost of cigarettes to the wholesaler. That formula includes, in addition to the cost of cigarettes, the cigarette taxes the wholesaler pays and an allowance for other costs borne by wholesalers, particularly a presumptive amount for cartage (if transportation was provided) and a presumptive amount for the cost of doing business.

---

[8]      The term "cost" is used as defined in the UCSA. *See* 6 <u>Del</u>. <u>C</u>. § 2602(4).

[9]      Delaware's purposes are reflected in the UCSA. *See* 6 <u>Del</u>. <u>C</u>. § 2601.

C.    **The UCSA Does Not Mandate Horizontal Price-Fixing By Wholesalers**

To succeed on the pending Motion, Cooper-Booth must prove that the UCSA mandates horizontal price-fixing by wholesalers, thereby creating an "irreconcilable conflict between the federal and state regulatory regimes." *Rice v. Norman Williams Co.*, 458 U.S. 659, 660 (1982). The focus of this inquiry must be on the cigarette wholesalers that, according to Cooper-Booth, have the right and power under the UCSA to fix the statutory minimums. *See California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105–06 (1980) (focus on supplier's conduct where vertical restraint alleged); *A.D. Bedell Wholesale Co., Inc.*, 263 F.3d at 248 (focus on horizontal competitors where horizontal restraint alleged); *see also Patrick*, 486 U.S. at 100; *Town of Hallie*, 471 U.S. at 46; *Mariana*, 338 F.3d at 203; *Massachusetts School of Law at Andover, Inc.*, 107 F.3d at 1036; *TEC Cogeneration Inc.*, 76 F.3d at 1570.

The record in this case demonstrates that cigarette wholesalers have no discretionary control over either the UCSA formula or the inputs used in that formula, which means (*a fortiori*) that they have absolutely no control (collective or otherwise) over the minimum prices established under that formula. Cooper-Booth concedes this, asserting that it is "the cigarette manufacturers . . . [that] control the UCSA formula to set wholesalers' minimum resale prices." Br. at 18. As the law and underlying policy of antitrust preemption demonstrate, the claimed discretionary control over price of the cigarette manufacturers[10] is utterly irrelevant on the pending Motion, and the correlative absence of wholesaler control over minimums requires the denial of the pending Motion.

---

[10]    In fact, the pricing of cigarette manufacturers is controlled by existing market forces, as the UCSA does not free manufacturers from any of those market forces. Cooper-Booth's failure to recognize that the UCSA does not regulate manufacturer pricing constitutes an additional flaw in its analysis. *See* n. 16, *infra*.

1.      **There Is No "Hybrid" Restraint Involving Wholesalers**

The basic flaw in Cooper-Booth's "hybrid restraint" analysis is that it relies entirely on manufacturer conduct, not wholesaler conduct. *See, e.g.*, Br. at 18.[11]  What Cooper-Booth fails to recognize is that, in assessing whether conduct is unilateral or hybrid, the only relevant private conduct is the conduct of the parties that are supposedly making antitrust mischief by restraining trade.  Here, that is allegedly the wholesalers.[12]

In each of the cases Cooper-Booth cites in its discussion of "hybrid restraints," the courts looked at whether the private actors allegedly committing a *per se* violation were able to control prices under the regulatory regime at issue.  In *Schwegmann*,[13] *Midcal*[14] and *Duffy*,[15] the Supreme Court considered statutes that allegedly mandated vertical price-fixing, with the Court finding a hybrid restraint because the suppliers were able to exert discretionary control over their customer's resale prices through a state regulatory regime.  For example, in *Duffy*, the Supreme Court found the statute gave suppliers (the alleged wrongdoers) the right to plug a non-market price into the statutory formula, thereby conferring on them discretionary power over the minimum resale prices their customers were required to charge.[16]

---

[11]     For example, Cooper-Booth says there is a "hybrid restraint" because a "cigarette manufacturer...can control the formula."

[12]     On the pending Motion, the cigarette manufacturers are treated as agents of the state in the state action analysis.  They would be treated as private actors for state action purposes if it were alleged that they were committing an antitrust violation, but that is not alleged on the pending Motion.

[13]     *Schwegmann Brothers v. Calvert Distillers Corp.*, 341 U.S. 384 (1951).

[14]     *Midcal*, 445 U.S. 97 (1980).

[15]     *324 Liquor Corp. v. Duffy*, 479 U.S. 335 (1987).

[16]     The Court went on to observe, in *dictum*, that if the New York statute had instead required suppliers to use a market-based price in the statutory formula, the statute would have been upheld.  This point is discussed in a leading antitrust treatise:

The Supreme Court's decision in *Fisher*[17] is particularly instructive.  In *Fisher*, a group of landlords challenged a city rent control ordinance on the grounds that, *inter alia*, it mandated horizontal price-fixing by the very landlords who were constrained by the maximum rent levels in the ordinance.  The court rejected this argument, ruling that the landlords had no control over the statutory maximums.[18]  Because the ordinance did not (as alleged) permit landlords to control collectively the maximum rent levels, the Court found there was no agreement on price among the landlords and that the city's restraint was unilateral in nature, not hybrid.[19]

---

> The [*Duffy*] Court preempted a state liquor statute that required retailers to charge at least 12 percent more than the posted wholesale bottle price.  Because the latter price was not necessarily the actual wholesale price and could be manipulated by the wholesaler, the Court found that the statute impermissibly gave wholesalers unsupervised discretion to specify the resale price.  But the Court then suggested, without deciding, that a simple "minimum markup" statute requiring retailers to sell at 12 percent more than the actual wholesale price they paid would enjoy *Parker* immunity.  The suggestion seems quite sensible, for although the hypothetical statute could eliminate price competition among retailers, that would result from the choice of the state rather than from the choice of the wholesaler.  Similarly, the amount of the minimum markup would be determined by the state, not by the wholesaler.  To be sure, the wholesaler would continue to have unsupervised discretion to set its actual wholesale price, but that discretion would not have been created by the statute.  Accordingly, there would be nothing to supervise.

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: *An Analysis of Antitrust Principles and Their Application* ¶ 226e at 194 (2006) (Vol. I.A), hereinafter "Areeda ¶__ at p. __ (Vol. ___ )."

[17]     *Fisher v. City of Berkeley*, 475 U.S. 260 (1986).

[18]     The court also observed that the ordinance did not give tenants any horizontal collective control over maximum rent levels:

> While the Ordinance does give tenants – certainly a group of interested parties – some power to trigger the enforcement of its provisions, it places complete control over maximum rent levels exclusively in the hands of the Rent Stabilization Board.  Not just the controls themselves, but also the rent ceilings they mandate have been unilaterally imposed on the landlords by the City.

*Id.* at 269.

[19]     Cooper-Booth erroneously asserts that the "deciding factor" in *Fisher* and three other Supreme Court cases was whether the State set the actual dollar amount of the restraint.  That is patently wrong:  The deciding factor in *Fisher* and every other case is whether the state gave the alleged antitrust wrongdoers discretionary control over pricing that enabled them to commit a *per se* violation.  The landlords were not given such discretionary control and, for that reason, there was neither an agreement among landlords nor hybrid action involving a party committing a *per se* antitrust violation.  *See Fisher*, 475 U.S. at 270.

Cooper-Booth's pending challenge is based on the proposition that the UCSA gives wholesalers collective control over the statutory minimums, but Cooper-Booth itself admits that wholesalers have <u>no</u> control over those minimums. *See* Br. at 18. With this admission, Cooper-Booth concedes that the UCSA does not confer on wholesalers – the alleged wrongdoers on this Motion – horizontal control over the statutory minimums. There is no hybrid restraint, as alleged.

### 2.     There Is No Conduct Constituting A Horizontal Price-Fix

The essential element of a horizontal price-fix is that horizontal competitors collectively agree upon their prices, rather than engaging in free and open competition. It is the collective agreement of rivals that is critical. Cooper-Booth misses this fundamental reality, erroneously asserting that the mere existence of a minimum or maximum price formula means there is a horizontal price-fix.[20] But the law is clear that statutory minimums or maximums constitute a horizontal price-fix only if they are established by horizontal competitors, not the state. *E.g.*, *Fisher, supra.*

In *Midcal*, the Supreme Court found that a California statute enabled suppliers to control the resale prices of their customers, thereby achieving impermissible control over downstream prices through the state regulatory regime. *See Midcal*, 445 U.S. at 105–06. The Court treated this as RPM even though the suppliers used a regulatory mechanism to dictate their customers' prices. A leading antitrust commentator has explained this aspect of the Court's ruling as follows:

> [T]he California statute was preempted by Federal antitrust law, and the reason was clear: although not requiring an "agreement" as such, it brought about the same marketplace results as illegal resale price maintenance agreements.

---

[20]     *See* Br. at 11.

Areeda ¶ 217b1 at p. 356 (Vol. I).  In sum, because the California statute challenged on RPM

grounds enabled a supplier to dictate its customers' prices, the court treated the resulting restraint

as a *per se* violation.  *See Midcal*, 445 U.S. at 105–06.[21]

      In contrast, where a statute is challenged on the grounds it mandates horizontal price-

fixing, the question is whether the governmental regulation enables horizontal competitors (here

wholesalers) to collectively control the statutory minimums.  In such circumstances, the moving

party must prove there was an agreement on price among horizontal competitors with pricing

discretion.  *E.g., Fisher.*  That does not exist in this case, as the record shows that Delaware – not

the wholesalers – selected the statutory formula and the inputs for that formula, including the

invoice prices of cigarette manufacturers.  In the context of the pending Motion, this means the

minimum prices under the UCSA have resulted from a unilateral state act, not a horizontal price-

fix among wholesalers implemented through the UCSA.

      New Jersey wholesalers have no control over the statutory minimums under the UCSA,

just as the landlords had no control over the statutory maximums in the *Fisher* case.  The

Supreme Court's reasoning in *Fisher* is fully applicable here:

> The ordinary relationship between the government and those who must
> obey its regulatory commands whether they wish to or not is not enough to
> establish a conspiracy.  Similarly, the mere fact that all competing
> property owners must comply with the same provisions of the Ordinance
> is not enough to establish a conspiracy among landlords.  Under
> Berkeley's Ordinance, control over the maximum rent levels of every
> affected residential unit has been unilaterally removed from the owners of

---

[21] Because the supplier was able to comply with the statute and thereby dictate a price to its customer, the court did not require other evidence of joint action, such as supplier coercion that causes a customer to comply with the supplier's wishes.  The supplier in that circumstance is able to use a statute to achieve RPM.  In contrast, when horizontal price-fixing is alleged, there must be evidence of a more traditional agreement, as the alleged antitrust offense requires a collectively agreed to price that is implemented through a state statute.  Although Cooper-Booth is mistaken in assuming that an agreement is not required when a preemption challenge is based upon a claimed horizontal price-fix (*see* Br. at 12), this Court need not reach this issue because it can find that no individual wholesaler (let alone any group of wholesalers) controls the minimum price levels under the UCSA.

those properties and given to the Rent Stabilization Board. While the Board may choose to respond to an individual landlord's petition for a special adjustment of a particular rent ceiling, it may decide not to. There is no meeting of the minds here. *See American Tobacco Co. v. United States*, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946), quoted in *Monsanto, supra*, 465 U.S., at 764, 104 S.Ct., at 1471. The owners of residential property in Berkeley have no more freedom to resist the city's rent controls than they do to violate any other local ordinance enforced by substantial sanctions.

*Fisher*, 475 U.S. at 267.[22]  Where, as here, wholesalers have no collective control over the minimum prices under the UCSA, there can be no argument that the UCSA mandates horizontal price-fixing by those wholesalers.

> **3.  Delaware's Dictation Of Minimum Prices Requires No Further State Supervision**

If Cooper-Booth had shown that the UCSA gave cigarette wholesalers the power to collectively fix their minimum resale prices, the question would then be whether Delaware provided a State mechanism that reviewed and actively supervised those minimum prices. The reason for requiring that form of active state supervision in that hypothetical circumstance is clear: if the UCSA gave cigarette wholesalers discretion to control the statutory minimums in the first instance, the statute should fail unless Delaware actively supervised the minimums established by those wholesalers.[23]  That type of active supervision is not required here, however, where cigarette wholesalers have (as discussed above) no collective ability to control the statutory minimums.

Through the UCSA, Delaware directs each wholesaler to charge no less than the statutory minimums. This is an absolute and specific state direction at the threshold that requires no

---

22    Cooper-Booth suggests that a minimum price level represents the outcome of a horizontal price-fix. *See* Br. at 11. As Areeda points out, that is only the case if the private actors involved (here wholesalers) establish those minimums by agreement. Areeda ¶ 227a at p. 197 (Vol. I.A.).

23    The supervision would be designed to prevent abusive conduct by wholesalers, presumably an effort to raise the minimums.

further active supervision. *Jetro Cash & Carry Enters., Inc. v. New York State Dept. of Taxation*, 605 N.Y.S.2d 538 (N.Y. App. Div. 1993) (further supervision not required because UCSA formula establishes state control); *Forrest City Grocery Co. v. Tennessee Dept. of Revenue*, 917 S.W.2d 247 (Tenn. Ct. App. 1995) (statute specifying minimum wholesaler markup on cigarettes required no further supervision).[24] The UCSA is, as far as wholesalers are concerned, a self-enforcing statute. This is the ultimate in state supervision.[25]

### 4.    Cooper-Booth's Fundamental Fallacy

There is no conflict (much less an irreconcilable conflict) between the Sherman Act and a Delaware statute that implements a regulatory goal by relying upon the market prices of parties <u>not</u> regulated by the statute and <u>not</u> engaged in antitrust violations. While that disposes of Cooper-Booth's preemption challenge, we also note that Delaware's UCSA makes perfect sense as a regulatory matter. In this area of its economy, Delaware wanted to prohibit discount pricing among wholesalers, which it was entitled to do as long as it did not give wholesalers the right to determine their own minimum prices. Delaware did what it was permitted to do: it developed its own formula to establish minimum wholesale prices, using in that formula the invoice prices of manufacturers so that the statutory minimums would change as the cost of cigarettes to wholesalers changed.

Cooper-Booth pretends that Delaware's reliance on the invoice prices of cigarette manufacturers matters in a preemption analysis charging a horizontal price-fix by wholesalers, essentially arguing that when preemption cases mention "private parties" they should be read as

---

[24]    *See also* Areeda, ¶ 226e at 194 (2006) (Vol. I.A).

[25]    In such circumstances there is "[n]o further supervision required, for the hypothetical statute leaves little or nothing to supervise. Areeda ¶ 226e at p. 194 (Vol. I.A.); *see also, id.* at n. 133 (citing *Jetro* and *Forrest City*).

referring to any private parties, not just the private parties freed from the constraints of competition and engaged in the alleged *per se* antitrust violation. *See* Br. at 17-18. Cooper-Booth's suggestion finds no support in any decided case, as all courts have always looked only to the private parties engaged in the alleged antitrust violation. *See Midcal,* 445 U.S. at 105–06; *A.D. Bedell Wholesale Co., Inc.,* 263 F.3d at 248; *see also Patrick,* 486 U.S. at 100; *Town of Hallie,* 471 U.S. at 46; *Mariana,* 338 F.3d at 203; *Massachusetts School of Law at Andover, Inc.,* 107 F.3d at 1036; *TEC Cogeneration Inc.,* 76 F.3d at 1570. Cooper-Booth's suggestion is flatly inconsistent with what the leading antitrust commentators have had to say. *See* Areeda ¶¶ 226-227a at pp. 164, 194 – 209 (Vol. I.A.). Cooper-Booth's suggestion has no support in law or logic.

As courts and commentators make clear, the issue of preemption arises only when a State ousts competition and thereby frees some private parties from the constraints of competition. The question in those cases is whether the State has given those parties control over pricing that enables them to fix prices. The sequential steps in a preemption analysis are all designed to answer that fundamental question, *i.e.*, is the State in control or are <u>those</u> private parties operating outside of State control and violating the Sherman Act. Here, Delaware has given cigarette wholesalers <u>no</u> ability to control the statutory minimums applicable to them, and that is why the UCSA is not in conflict with or preempted by the Sherman Act.

## CONCLUSION

Cooper-Booth's argument misapprehends the law and is unsupported in fact. There is <u>no</u> evidence that the UCSA authorized wholesalers to conspire and control the statutory minimums. Indeed, why would Cooper-Booth and the other defendants challenge the UCSA if it gave wholesalers that kind of power? The answer is, of course, the UCSA gives them no such power.

Cooper-Booth knows the applicable statutory minimums but routinely sells below those minimums and violates the UCSA. That is why Zucca is in this Court, and that is why Cooper-Booth is trying so strenuously (but also so erroneously) to do away with the statute.[26] For these reasons, as well as those discussed above, Zucca respectfully asks this Court to deny the pending Motion.

Respectfully submitted,

**SAUL EWING LLP**

*/s/ Candice Toll Aaron*

Candice Toll Aaron (DE ID No. 4465)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800 (Phone)
(302) 421-6813 (Fax)
caaron@saul.com

-and-

Daniel R. Chemers
W. Damon Dennis
Pervis Chris Lee
500 East Pratt Street, Suite 900
Baltimore, MD 21202-3171
(410) 332-8600 (Phone)
(410) 332-8862 (Fax)
dchemers@saul.com
ddennis@saul.com
plee@saul.com

Dated: April 15, 2008          *Counsel for L.J. Zucca, Inc.*

---

[26]    In *Fisher*, where the plaintiff landlords challenged the City's rent control ordinance as a horizontal price-fixing agreement among landlords, the Supreme Court rejected that argument, stating:

> Berkeley's landlords have simply been deprived of the power freely to raise their rents. That is why they are here. And that is why their role in the stabilization program does not alter the restraint's unilateral nature.

*Fisher*, 475 U.S. at 269-70.

# Exhibit 1

## Affidavit of Charles Leffler

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| L.J. ZUCCA, INC., | : | |
| Plaintiff, | : | Civil Action No.: 1:07-cv-00002 |
| v. | : | |
| ALLEN BROS. WHOLESALE | : | Removed from Chancery Court |
| DISTRIBUTORS INC.; COOPER-BOOTH | : | New Castle County, Delaware |
| WHOLESALE COMPANY; EBY-BROWN | : | |
| COMPANY LLC; and KLEIN CANDY | : | C.A. No. 2572-N |
| CO. LP, | : | |
| Defendants. | : | |

## AFFIDAVIT OF CHARLES LEFFLER

Charles Leffler, of full age, being duly sworn, according to law, upon his oath deposes and says:

1.    I am the Vice-President of Operations of L.J. Zucca, Inc. ("Zucca"). I have been employed by Zucca since 1993. I have been involved in companies engaged in the sale and/or the distribution of cigarettes since 1983. I make this Affidavit based upon personal knowledge.

2.    Zucca is a cigarette wholesaler in Delaware. In this case, Zucca has sued companies that are also cigarette wholesalers.

3.    Cigarette manufacturers sell cigarettes to cigarette wholesalers. Cigarette manufacturers include companies such as Liggett Group, Inc., Lorillard Tobacco Company, Phillip Morris USA, Inc. and R.J. Reynolds Tobacco Company. As this indicates, cigarette manufacturers are generally very large companies that sell cigarettes both in Delaware and in many other jurisdictions.

4.    At any point in time, each cigarette manufacturer has a single invoice price for each of its brands of cigarettes. Each manufacturer announces any changes in its invoice prices

through notifications, a copy of which is attached hereto as Exhibit A, which are purportedly sent to all direct customers of that manufacturer in the United States. Each manufacturer's invoice prices apply to all Delaware wholesalers (and, I believe, all United States wholesalers) that purchase cigarettes directly from that manufacturer. In my experience, each manufacturer presents its invoice prices to wholesalers on a take-it or leave-it basis.

5.    Delaware's Unfair Cigarette Sales Act ("UCSA") establishes the minimum prices at which a wholesaler can sell cigarettes to a retailer in Delaware.

6.    Cigarette wholesalers have no ability, either individually or collectively, to affect the UCSA's statutory minimums. The UCSA does not permit wholesalers to collectively set the statutory minimums.

FURTHER AFFIANT SAYETH NOT.

_____
Charles Leffler

SWORN TO AND SUBSCRIBED before me this _15_ day of April, 2008.

_____
Notary Public

My Commission expires: _3-17-10_

# Exhibit A

Received 02/14/2008 02:13PM in 02:08 on line [1] for 3252 * Pg 8/10
14-02-'08 15:12  FROM-                                                    T-600  P008/010 F-118

# RJReynolds

336-741-5000
rjrt.com

J-164-07

November 28, 2007

To Our Direct Buying Customers:

SUBJECT: Manufacturer's Price Increase on Specified RJRT Brands

Effective with all product orders placed after 3:00 p.m. (EST) today, November 28, 2007 and thereafter, R. J. Reynolds Tobacco Company will be increasing the list price on the brands (specified below) as follows:

| Brand Styles | New List Price per Carton |
|---|---|
| BELAIR, CAPRI, CARLTON, ECLIPSE, LUCKY STRIKE, MORE, NOW, PALL MALL (Full-Price), TAREYTON, VANTAGE, CAMEL Non-Filter | $34.40 |
| GPC | $20.44 |

**Note:  The amount of the list price increase for the above Full Price brands is $8.85 per thousand ($1.77 per carton) and for GPC, the amount of increase is $2.50 per thousand ($0.50 per carton).**

**The list prices on all other RJRT brands (including CAMEL, KOOL, WINSTON, SALEM, PALL MALL (Savings) and DORAL) remain unchanged.**

Attached are the New Flat Rate Terms and Advanced Payment Terms for all of our products. All other allowances and programs remain the same.

We reserve the right to reduce excessive order quantities by brand style to reasonable amounts in order to provide equitable shipments to all customers. R. J. Reynolds Tobacco Company is not liable for any errors in this communication that may occur during the transmission process.

Thank you for your cooperation and support in the marketing of our products.

R. J. REYNOLDS TOBACCO COMPANY

EXHIBIT
A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

L.J. ZUCCA, INC.,                                :
                                                 :
              Plaintiff,                         :    Civil Action No.: 1:07-cv-00002 JJF
                                                 :
       v.                                        :
                                                 :    Removed from Chancery Court
ALLEN BROS. WHOLESALE                            :    New Castle County, Delaware
DISTRIBUTORS INC.; COOPER-BOOTH                  :    C.A. No.  2572-N
WHOLESALE COMPANY; EBY-BROWN                     :
COMPANY LLC; and WESTERN SKIER,                  :    JURY TRIAL DEMANDED
LTD. F/K/A KLEIN CANDY CO. LP,                   :
                                                 :
              Defendants.                        :

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2008, upon consideration of the

**Defendant Cooper-Booth's Motion for Partial Judgment on the Pleadings** (the "Motion"),

and Plaintiff's Opposition thereto, and the Defendant's Reply in support of its Motion, it is

hereby ORDERED and DECREED that:

The Motion is DENIED.

                                        BY THE COURT:


                                        _____
                                        The Honorable Joseph J. Farnan, Jr.